(No. 56217.—

RAYMOND M. WALSH, Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF ORLAND PARK *et al.,* Appellants.

*Opinion filed April 22, 1983.—Rehearing denied May 27, 1983.*

Goldstine and Broida, Ltd., of Summit (Ronald J. Broida, Richard J. Skrodzki, and Kenneth J. Nemec, Jr., of counsel), for appellants.

Condon, Cook & Roche, of Chicago (James J. Roche, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The chief of the police department of the village of Orland Park charged Raymond Walsh, a sergeant in the department, with violating several departmental regulations in connection with a shooting incident which occurred in his home. In an administrative proceeding the board of fire and police commissioners of the village (board) found him guilty of the charges and ordered that he be discharged from the department. The only issue on this appeal is whether a sanction less than discharge is appropriate in this case because at the time of the incident Sergeant Walsh was on medical suspension for treatment of a psychiatric problem.

The specific charges were:

    (1)   excessive use of intoxicants;

    (2)   reckless conduct and aggravated assault;

    (3)   conduct unbecoming a police officer;

    (4)   unlawful use of a weapon;

    (5)   conduct tending to cast disrepute on the department;

    (6)   conduct contrary to the public peace or welfare; and

    (7)   drawing a firearm needlessly.

The board found Walsh guilty of all the charges except excessive use of intoxicants and ordered that he be discharged from the police force.

Sergeant Walsh filed an action in the circuit court of Cook County for review of the board's administrative decision. He alleged that the board had no jurisdiction over his case because he had tendered his resignation from the force. He also claimed that the board's finding of guilt was against the manifest weight of the evidence. The circuit court found that his attempt to resign was ineffective because he had not tendered his letter of resignation to the chief of police as required by departmental regulations. The circuit court also found that the board's decision was supported by the manifest weight of the evidence.

Sergeant Walsh appealed, and the appellate court agreed with the department's decision on both the issues of jurisdiction and guilt. (103 Ill. App. 3d 635.) Nevertheless, the appellate court reversed the department's decision to discharge Sergeant Walsh and remanded the cause to the board for the consideration of an alternative sanction. The court held that the sanction of discharge was too severe in view of the fact that at the time of the incident Sergeant Walsh was on medical suspension for treatment of a psychiatric problem. (103 Ill. App. 3d 635, 639-40.) We granted the board leave to appeal from the appellate court decision.

The evidence showed that Sergeant Walsh was ap-

pointed to the Orland Park police department in 1971. Robert Olson, the police chief of Orland Park, characterized Sergeant Walsh as a "very competent" policeman, but noted that he had suffered from recurring medical problems since the fall of 1975. On April 22, 1977, Chief Olson placed Walsh on medical-disability suspension. This status removed him from the obligations of active duty but allowed him to retain his rank, his uniform, his badge and his service revolver. This status also left Sergeant Walsh eligible for a disability pension at 50% of his salary at the date of suspension (Ill. Rev. Stat. 1977, ch. 108½, par. 3–114.2), a pension that he was granted by the board of trustees of the police pension fund of Orland Park (pension board).

Around midnight on September 17, 1977, Walsh telephoned Sergeant Don Smith, a friend of his on the police force, and told him that "it was his time" and that he was "going to do himself in." After Walsh hung up, Smith called him back and had a similar conversation. Smith immediately went to Walsh's home, where Walsh met him at the door with a gun in his hand.

For the next 20 to 30 minutes, Smith, Walsh, and Walsh's wife sat and talked in the living room of the Walsh home. Walsh again told Smith that it was "his time" and that "he didn't want to live any more." On numerous occasions Walsh pulled the hammer of the gun back into a cocked position and pointed it at Smith, at Mrs. Walsh, or at himself. Smith told Walsh several times not to point the gun at him and to put the gun down, but Walsh refused each of these requests.

Walsh got up and poured himself a drink at the bar. After a few minutes, he spilled the drink and dropped the glass onto the floor. With Smith and Mrs. Walsh in close proximity he shot at the glass on the floor. The shot missed, but Walsh then kicked the glass and broke it. Walsh then bent down to pick up some cigarettes with the

gun pointed at Smith, who was less than three feet away. The gun discharged and Smith was hit in the face. Smith recovered from this wound.

Four Orland Park police officers arrived at the Walsh home after hearing a radio transmission dispatching an ambulance to the residence. They noted that Walsh had alcohol on his breath and was "distraught and upset" over the shooting. "Oh my God, I've just shot my best friend," he was reported as saying.

In *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550, we recognized that "[a] court's scope of review of an administrative agency's decision regarding discharge is a two-step process." First, the court must determine whether the agency's finding of guilt is contrary to the manifest weight of the evidence. In this case, both the circuit court and the appellate court concluded that the board's findings were not contrary to the manifest weight of the evidence, and Walsh has not appealed from that decision.

"The second step in the court's analysis is to determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist." (85 Ill. 2d 547, 551.) This court has defined "cause" as "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360; see also *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 30.

An administrative tribunal's finding of "cause" for discharge commands our respect, and it is to be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service. (*DeGrazio v. Civil Service*

*Com.* (1964), 31 Ill. 2d 482, 489.) In *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, we reemphasized the considerable deference that must be afforded to an administrative finding of "cause" for discharge:

> "Sutton asks this court to consider his years of exemplary service in the Department, the extenuating circumstances of his frustration after being reprimanded, which caused him to make the statements attributed to him, and the fact that these statements were made thoughtlessly. The question, though, is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. Nor is it whether this court would conclude in view of the mitigating circumstances suggested by Sutton that a different penalty would be more appropriate. *The question is whether, in view of the circumstances presented, this court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service.*" (Emphasis added.) 91 Ill. 2d 404, 411.

In the present case, Sergeant Walsh displayed his gun in a most reckless and irresponsible manner. In close proximity to his wife and close friend in his home, he intentionally discharged his gun at a glass on the floor. He pulled the hammer of the gun back into a cocked position and pointed it at other persons. As a direct result of this misconduct, the gun discharged into Sergeant Smith's face.

A police officer hardly can commit a more serious offense than misuse of his gun. Nothing can undermine public confidence in the ability and good judgment of police officers more than the misuse of firearms. Common sense requires that each officer show considerable care and maturity in handling and using his service revolver, for he has ready access to this weapon every day of his career. An officer must never display his gun in a way that unnecessarily threatens other persons. We find that the seriousness of this offense is more than enough to warrant the board's

decision to discharge Sergeant Walsh. *Cf. Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 506-07 (board's decision to discharge upheld where officer kicked and dented the side of a squad car and made abusive remarks about the chief of police).

Nevertheless, Walsh argues that it is arbitrary and unreasonable to grant a medical suspension and disability pension when an officer has psychiatric problems and later discharge him and take away his pension when the same psychiatric condition causes him to act in a manner that warrants discharge. The appellate court agreed and held that the maximum sanction of discharge was unwarranted because "[i]t appears that [Walsh's] conduct was a manifestation of the very psychological problems for which he was on disability suspension." (103 Ill. App. 3d 635, 639.) The court apparently felt that a disability retirement or a continuation of the disability suspension was a more appropriate sanction than discharge in view of Walsh's history of psychiatric problems.

Evidence in the record does establish that Walsh had some kind of psychiatric problem. Chief Olson had placed him on medical-disability suspension and the pension board had granted him a disability pension pending the treatment of his illness. We find no evidence in the record, however, establishing the specific nature of Walsh's psychiatric problems or whether the shooting incident had any relation to them.

The only specific evidence relating to Walsh's psychiatric problems was presented in two letters that he had submitted to the pension board in support of his application for a pension. One letter, dated June 14, 1977, was from Dr. Rudolph G. Novick and Dr. Daniel Faisal and read as follows:

"This is to advise you that Raymond Walsh has been in treatment with me since March 5, 1977.

So far, treatment has consisted of chemotherapy, biofeedback and weekly sessions of psychotherapy. His con-

dition is framed into the anxiety-phobic depersonalization syndrome. A consultation with Dr. Rudolph Novick, the Psychiatrist-in-Chief here at Forest Hospital, concurred with the diagnosis and the treatment disposition and planning.

In our professional opinion, at this time, Mr. Walsh is not able to return to work."

The other letter, dated July 12, 1977, was from Dr. Dean B. Leyers and read as follows:

"Patient Ray Walsh has been to see me several times since the beginning of the year, with severe headaches, tension, and anxiety.

He was referred for psychological evaluation and anxiety reaction diagnosed, which will keep him from fulfilling his duties as a police officer."

The bodies of these two letters have been reproduced in full in order to emphasize the vagueness of the psychiatric evidence submitted to the board.

On the basis of the vague psychiatric evidence presented to the board and the seriousness of Sergeant Walsh's misconduct, we would have no alternative except to hold that the board's decision was neither arbitrary nor unreasonable. However, because the psychiatric evidence presented was so vague and because the board's decision to discharge Sergeant Walsh for cause may jeopardize his pension rights, we believe that justice and fairness require us to vacate the judgments of the appellate and circuit courts and the order of the board and remand this cause to the board for the submission by either party of further evidence that is relevant to the issue of whether Sergeant Walsh's misconduct was substantially the result of the psychiatric problems that led to his prior medical suspension. If the board finds that the misconduct was substantially related to those problems, the proper sanction would be other than discharge for "cause."

*Judgments and order vacated;*
*cause remanded, with directions.*

JUSTICE UNDERWOOD, dissenting:

After describing as "most reckless and irresponsible" Sergeant Walsh's actions in shooting at the glass on the floor with others nearby, pointing the cocked and loaded gun at the others, and then shooting Sergeant Smith in the face, the majority finds that "the seriousness of this offense is more than enough to warrant the board's decision to discharge Sergeant Walsh." (96 Ill. 2d at 106-07.) The majority also notes that "An administrative tribunal's finding of 'cause' for discharge commands our respect," and that "considerable deference" must be accorded such findings. (96 Ill. 2d at 106.) With those analyses I could not agree more. But in what seems to me a remarkable *non sequitur*, the majority then proceeds to vacate the board's order and remand the cause for further hearings.

This action apparently is taken because a discharge may affect Sergeant Walsh's pension rights, and the majority believes he is entitled to a second opportunity to establish that the threats and shooting were the result of the psychiatric problems. There is, however, simply no evidence in this record which indicates the shooting was in any way connected with the unspecified and undefined psychiatric problems. Nor is there any indication that additional, more probative evidence can be produced.

A full and complete opportunity was afforded in the original hearing for the introduction of evidence of a causal connection between the shooting and the medical problems. That relationship was not established, and the misconduct was, as the majority states, "more than enough to warrant the board's decision to discharge Sergeant Walsh." (96 Ill. 2d at 106-07.) Given the extremely serious and life-threatening nature of the conduct involved here, I see no reason to do other than affirm the board's action. *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404; *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489.

JUSTICE MORAN joins in this dissent.