DANIEL CARRIGAN, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF GLENDALE HEIGHTS *et al.*, Defendants-Appellants.

Second District   No. 83—90

Opinion filed January 27, 1984.

Michael K. Durkin, of Lasusa & Storino, Ltd., of Des Plaines, for appellants.

John W. Darrah, of Ryan & Darrah, of Addison, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, the Board of Fire and Police Commissioners of the village of Glendale Heights, Illinois (Board), appeals from an order of the circuit court of Du Page County entered on administrative review reversing the Board's decision to discharge plaintiff, Daniel Carrigan, from the village of Glendale Heights police department for violations of departmental rules and regulations. The basis of the court's decision was that the Board's finding that plaintiff was guilty of the charge of reckless conduct, one of several charges filed by the chief of police, was contrary to the manifest weight of the evidence. The trial court did find, however, that the findings of the Board that plaintiff violated the rules and regulations of the department on the remaining charges were not against the manifest weight of the evidence, but that these remaining findings did not constitute conduct that was sufficiently substantial or significantly related to the performance of the plaintiff's police duties to establish cause for discharge. The trial court further ordered that the cause be remanded to the Board for determination of the proper penalty to be imposed consistent with the findings of the trial court.

The Board appeals from this order and contends that the trial court erred in determining that (1) the Board's finding that plaintiff was guilty of reckless conduct was against the manifest weight of the evidence; and (2) the Board's findings on the remaining charges did not constitute lawful grounds for discharge. Plaintiff cross-appeals from a part of the trial court's order which found that the Board had jurisdiction over the plaintiff to conduct a hearing and render a finding be-

cause plaintiff had waived the statutory requirement that a hearing be conducted within 30 days of the filing of the charges.

Plaintiff, a sergeant, shift commander, and 12-year veteran of the police department of the village of Glendale Heights, testified that he informed his chief, who was called to his home, that he had been out with his wife on the evening of September 10, 1981, while off duty, and had consumed seven or eight alcoholic drinks at the Cloverleaf Restaurant located in the village of Bloomingdale, Illinois. Plaintiff and his wife then drove back to their home in Glendale Heights at approximately 2 a.m., September 11. Thereafter plaintiff and his wife were seated downstairs in the lower level family room of their residence when they began to argue. Plaintiff's wife left the room, went upstairs to the kitchen and began to roll what appeared to be a marijuana cigarette. Upon discovering this, plaintiff grabbed the bag of marijuana and went downstairs whereupon his wife followed him. She then grabbed the bag out of his hand and ran upstairs toward the bathroom. Plaintiff stated that he became enraged and, though not knowing why, grabbed a snub-nose .38-caliber revolver which he kept under his stereo and ran upstairs after his wife. Plaintiff encountered his wife in their bathroom where she was in the process of flushing the marijuana down the toilet. Plaintiff then fired one shot into the toilet. Plaintiff stated that he was one foot from the toilet at the time of the shot and his wife "was close, but I don't recall seeing her, but I know she was close." Plaintiff defined "close" as perhaps three or four feet away from him. He could not recall where she was in relation to the toilet, but probably she was in back of him, maybe in the hallway. He could not recall whether she was in the bathroom, but she may have been just in back of him. Plaintiff's wife then left the home and plaintiff stated that he assumed he threw the gun back on the stereo and went out to look for his wife. Upon his arrival back home about 15 or 20 minutes later, plaintiff found Chief McCollum of the Glendale Heights police department and two police officers outside of his residence and his wife in the back seat of one of the squad cars. Shortly thereafter Chief McCollum questioned plaintiff as to the location of the .38-caliber weapon. Plaintiff was unable to find it at that time but stated that he subsequently located it two days later under the stereo.

Later that morning plaintiff gave a statement to Chief McCollum which he said was substantially the same as related earlier that morning to Chief McCollum. Upon questioning by his own attorney, plaintiff related that he and his wife lived alone in the home and his wife was still residing with him there. He stated that the toilet was to the right front as one stood in the bathroom doorway and about three feet away.

He was a foot away from the toilet when he discharged the weapon. The bathroom is small and there is a foyer immediately adjacent to the bathroom. He had never seen his wife use marijuana before or seen it in his home.

Chief McCollum testified that when he arrived at the home he found a shattered toilet, green plant material strewn about the floor, particles from the toilet on the floor, and some black residual materials that looked similar to powder burns. When he spoke with plaintiff, he was told by him that "he caught his wife with some marijuana. He lost control and he shot the toilet upstairs." Plaintiff said he did not know where he placed the gun, and a search of the home did not reveal it although two other guns were found. He described plaintiff at that time as coherent, cooperative, and passive. Plaintiff told him at least three times that "he lost his head, he lost control." He talked with plaintiff again that morning in his office. Plaintiff also related then that he had consumed seven alcoholic drinks that evening and morning, that his wife was approximately four feet from the firearm when it was discharged, and that he did it because he lost control, and when she tried to flush marijuana down the toilet he just shot the toilet. Plaintiff told him that he did not recognize the possibility of a ricochet at the time.

Two other officers testified that plaintiff was not intoxicated, that he said he lost his head, that plaintiff's wife was intoxicated, and that the toilet was completely shattered.

The written charges filed by Chief McCollum against plaintiff arising out of this incident specified violations of certain rules and regulations of the Glendale Heights police department relevant to firearms use/display, law enforcement code of ethics, neglect of duty, conduct unbecoming an officer, and violations of law. The violations of law were later particularized as a violation of the Criminal Code of the offense of reckless conduct and a violation of a village ordinance of discharge of a firearm within the village. The written findings and decision of the Board found the plaintiff's conduct in violation of the department's rules and regulations as charged and constituted a substantial shortcoming that continued employment would be detrimental to the police department. Plaintiff was discharged by the Board and filed for administrative review in the circuit court.

In its order finding the Board's decision that plaintiff was guilty of reckless conduct was contrary to the manifest weight of the evidence, the trial court stated that the record established that plaintiff discharged the firearm in his own home and his wife was standing behind him and at least three feet from the point of impact of the bullet. The

court further found that the record did not establish that plaintiff's wife was in the line of fire nor was there a probability that she would be placed in any harm. All other findings of the Board that plaintiff violated department rules and regulations were found by the trial court to be not against the manifest weight of the evidence. However, the court determined that these findings did not constitute conduct sufficiently substantial or significantly related to performance of plaintiff's duties to establish cause for discharge.

██ We address initially plaintiff's contention in his cross-appeal that he was not given a hearing on the charges filed against him within the time required by law. In this regard, plaintiff points out that section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—17) provides that a hearing on the charges must be commenced "within 30 days of the filing thereof." He further contends that the charges were filed with the Board on September 12, 1981, a hearing was not held until October 29, 1981, and consequently, not commenced within the statutory 30-day period.

The record reveals that written charges against plaintiff were filed with the Board on September 12, 1981. On September 14 plaintiff was served with a copy of the charges and notice that the Board ordered a hearing on October 2. On the date scheduled for the hearing plaintiff appeared *pro se* and requested a continuance so he could confer with counsel whom he had previously contacted and told of the scheduled hearing, and who had not appeared. Before the Board allowed the matter to be continued, counsel for the chief of police stated that charge No. 2 had listed plaintiff's actions violated a certain police department rule and regulation set forth as "1.5.2.38 violation of law," and he wanted to specify what law that was. Counsel thereafter stated the first law was reckless conduct, a statute, and read to plaintiff that offense, and the second was a village ordinance entitled discharge of weapons, and he also read that ordinance to plaintiff. He was instructed by the Board chairman to send a letter to plaintiff's attorney containing these specified charges. The hearing date was then continued to October 16. On October 16 plaintiff appeared with his attorney, who requested another continuance because he had just been retained. The continuance was granted and the matter set for a hearing on October 29, which was thereafter held as scheduled.

The statutory 30-day time limit to commence a hearing as provided in section 10—2.1—17 of the Illinois Municipal Code is mandatory, and a failure of the Board to commence a hearing within that time period causes the Board to lose jurisdiction of the case. (*Bridges v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 190, 403 N.E.2d

1062.) However, where the delay in commencing the hearing until after the 30-day period is not attributable to the Board, but rather occasioned by the plaintiff, the statute is not violated. (*Riggins v. Board of Fire & Police Commissioners* (1982), 107 Ill. App. 3d 126, 129-30, 437 N.E.2d 327; *Finin v. Board of Fire & Police commissioners* (1981), 98 Ill. App. 3d 879, 882-83, 424 N.E.2d 976.) Here, the hearing was originally scheduled for October 2 within the 30-day period, but was continued on that date at the specific request of the plaintiff to allow him to confer with his attorney who had failed to appear for the hearing.

Plaintiff maintains, however, that the continuance "was as much for the convenience of the Board and the Chief as it was the plaintiff," and the delay should not be attributable to him. While it does appear that certain charges against plaintiff were clarified on October 2 by referring to specific statute and village ordinance violations, and the hearing was continued to October 16 when the Board could next meet as an entire body, the fact remains that plaintiff first requested the continuance and elected not to commence the hearing on the October 2 scheduled date. We conclude that the delay in the commencement of the hearing beyond the statutory 30-day period was attributable to plaintiff and the Board did not lose jurisdiction under these circumstances.

■ Focusing next on the Board's appeal, we must first address the contention by the Board that the trial court erred in finding that the Board's decision that plaintiff was guilty of the charge of reckless conduct was contrary to the manifest weight of the evidence. The basis of the trial court's ruling was its opinion that the record established plaintiff discharged the firearm in his own home and his wife was standing behind him and at least three feet from the point of impact of the bullet. Therefore, the court found she was not in the line of fire nor was there a probability she would be placed in any harm. All other charges against plaintiff which the Board found he violated were found by the trial court to be not against the manifest weight of the evidence.

A trial court's scope of review of an administrative agency's decision regarding discharge is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. Then the court must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885.) Findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110; *Sutton v. Civil Ser-*

*vice Com.* (1982), 91 Ill. 2d 404, 409, 438 N.E.2d 147.) Where a criminal offense is the basis of a charge before an administrative body, proof of that offense by a preponderance of the evidence is required. *Board of Education v. Adelman* (1981), 97 Ill. App. 3d 530, 423 N.E.2d 254.

A person commits reckless conduct when he "causes bodily harm to or endangers the bodily safety of an individual by any means * * * if he performs recklessly the acts which cause the harm or endangers safety, whether they otherwise are lawful or unlawful." (Ill. Rev. Stat. 1981, ch. 38, par. 12—5(a); *People v. Smith* (1979), 76 Ill. App. 3d 191, 195, 392 N.E.2d 682.) A person performs acts recklessly "when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow * * * and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1981, ch. 38, par. 4—6.) While the committee comments to section 12—5 state that it is aimed primarily at the reckless homicide type of conduct where no homicide results (Ill. Ann. Stat., ch. 38, par. 12—5, Committee Comments, at 573 (Smith-Hurd 1979)), the language of the statute does not limit applicability of that statute to conduct which places a person in danger of extreme bodily harm or death (*People v. Burton* (1981), 100 Ill. App. 3d 1021, 1025, 427 N.E.2d 625; *People v. Swanson* (1980), 84 Ill. App. 3d 245, 246, 405 N.E.2d 483), and reckless conduct is a broad and all-inclusive offense. (*People v. Smith* (1980), 90 Ill. App. 3d 83, 86, 412 N.E.2d 1102.) A gun is a deadly weapon capable of killing another, and handling a gun improperly may be reckless conduct. (*People v. Perry* (1974), 19 Ill. App. 3d 254, 258, 311 N.E.2d 341.) It has been held that the firing of a loaded weapon in the general direction of another may support a verdict of reckless conduct. (*People v. Smith* (1979), 76 Ill. App. 3d 191, 195-96, 392 N.E.2d 682.) The firing of a gunshot into the ground which ricocheted and caused injury can constitute reckless conduct. (*People v. Johnson* (1974), 20 Ill. App. 3d 1085, 1087-88, 314 N.E.2d 197.) In an administrative hearing where a charge is based on the offense of reckless conduct, the findings of the agency that the evidence supports the act of reckless conduct will not be reversed unless the decision is against the manifest weight of the evidence. See *H.B. Investment & Development, Inc. v. License Appeal Com.* (1977), 47 Ill. App. 3d 750, 753-54, 365 N.E.2d 457.

In the case at bar, the record indicates that plaintiff discharged a .38-caliber revolver by firing one shot into a toilet, while approximately one foot away, causing the toilet to shatter. Admittedly, plaintiff "lost control" and told Chief McCollum that he did not recognize the possibility of a ricochet from the shot at the time. The bathroom was small

and plaintiff's wife at the time the shot was fired, according to plaintiff, was close to him, perhaps three or four feet away in back of him. She could have been in the hallway just outside the bathroom, plaintiff could not definitely recall, but she was in back of him.

■ Under these particular circumstances, the Board could conclude from the facts presented that plaintiff endangered the bodily safety of his wife and consciously disregarded a substantial and unjustifiable risk, and that such disregard was a gross deviation from the standard of care which a reasonable person would exercise in the situation. It is uncontradicted that plaintiff "lost control," discharged one shot from a .38-caliber pistol into a toilet, shattering it, in a small bathroom while his wife was behind him within three or four feet, and failed to recognize the possibility of a ricochet. While the precise location of plaintiff's wife in relation to plaintiff cannot be determined from the record, there are sufficient facts for the Board to find plaintiff's wife was endangered by a ricochet from the shot fired. There is no indication that plaintiff made certain his wife was out of the way of any potential harm when he fired his weapon nor that he considered her safety. While a court will grant relief where the record does not disclose evidentiary support for the agency's determination, the permissible scope of judicial inquiry concerning factual determinations by administrative agencies has been limited to ascertaining if the agency decision was contrary to the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358-59, 307 N.E.2d 371.) Accordingly, we cannot conclude that the finding of the Board that plaintiff's conduct constituted the offense of reckless conduct was against the manifest weight of the evidence. The trial court's reversal of that finding was erroneous.

Next, we must determine whether the Board's findings of fact provide a sufficient basis for its conclusion that cause for discharge exists. An administrative tribunal's finding of cause for discharge commands respect, and it is to be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105-06, 449 N.E.2d 115.) Under this rule, it will stand even if the court considers another sanction more appropriate. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258, 449 N.E.2d 845.) Cause is defined as some substantial shortcoming which renders the employee's continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as good cause for his no longer occupying the place. *Walsh v. Board of Fire & Police Commissioners* (1983),

96 Ill. 2d 101, 105, 449 N.E.2d 115.

The Board found plaintiff's conduct violated a department rule and regulation which prohibits violation of any Federal, State, county, or municipal law. Specifically, the Board found plaintiff committed reckless conduct in violation of State law, and committed the unlawful discharge of a firearm within the village of Glendale Heights in violation of a village ordinance. In addition, the Board determined that plaintiff's conduct violated three other department rules and regulations as charged. These latter violations involve infractions of rules and regulations which prohibit the drawing or displaying of a firearm except for necessary inspection or use, require self-restraint and regard for the welfare of another, and prohibit neglect of duty by failing to comply with the department rules and regulations. The Board found that plaintiff's conduct constituted conduct unbecoming to a police officer and was such a substantial shortcoming that continued employment would be detrimental to the operation, efficiency, discipline, and morale of the police department.

Neither plaintiff nor the Board offered additional evidence relevant to the issue of discharge or other appropriate sanctions after the initial hearing to adjudicate the charges. Thus, the record consists of evidence of the proven charges of plaintiff's misconduct and the testimony that he is a sergeant and shift commander with the police department and has been an officer for 12 years.

Recent decisions of our supreme court have held that misuse of his gun by a police officer is a serious offense directly related to the public's confidence in the ability and good judgment of a police officer, and the decision by the agency to discharge the officer was warranted and related to the needs of the police department or the municipality. (See *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845; *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115.) Respect for weapons is paramount to an efficient and disciplined police department. (*Jenkins v. Universities Civil Service System Merit Board* (1982), 106 Ill. App. 3d 215, 223, 435 N.E.2d 804.) Although the officer may be off duty at the time of the improper use of his weapon, the decisions do not draw any distinction in that regard in the seriousness of the conduct. (See *Kloss; Jenkins;* see also *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.) The fact that the discharge arose, in effect, from a single incident does not preclude a discharge for cause assuming that the conduct is of a nature that sound public policy would recognize as good cause for no longer occupying the position of police officer. *Humbles v. Board of Fire & Police Commission-*

*ers* (1977), 53 Ill. App. 3d 731, 734, 368 N.E.2d 1049.

Plaintiff maintains that this is but a single incident in his 12-year career as a police officer, and that he has attained the rank of sergeant and was assigned the duties as a shift commander. He further argues that there is no evidence that his actions constitute a substantial shortcoming which would be detrimental to the police department, and notes that members of the community were not present at the hearing. The latter argument is unpersuasive since the misuse of the weapon itself is a serious offense, was known to other officers of the department who investigated the incident and, accordingly, relates directly to the discipline and efficiency of the department in which the public are interested.

■ Plaintiff's rank and years of experience were before the Board for it to consider in selecting the type of sanction necessary to the needs of the department. The question is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258, 449 N.E.2d 845.) The question is whether in view of the circumstances presented, this court can say that the Board, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147.) We conclude that the Board's decision to discharge plaintiff based upon the findings of violations of the charges brought against him was not arbitrary, unreasonable, nor unrelated to the requirements of service.

For the foregoing reasons, the order of the circuit court of Du Page County vacating the Board's finding on the charge of reckless conduct and vacating and remanding the Board's sanction of discharge is reversed. On the cross-appeal, the finding of the trial court that the Board has jurisdiction of the matter is affirmed. The order of the Board is reinstated.

Affirmed in part, reversed in part, and the order of the Board is affirmed.

HOPF and NASH, JJ., concur.