2022 IL App (1st) 210289-U

SIXTH DIVISION
July 29, 2022

No. 1-21-0289

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| STEVEN CRUZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 11461 |
| THOMAS J. DART, In His Official Capacity as Cook | ) | |
| County Sheriff, and THE COOK COUNTY SHERIFF'S | ) | |
| MERIT BOARD, | ) | The Honorable |
| | ) | Anna Demacopoulos, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The decision of the Cook County Sheriff's Merit Board is affirmed where the Board complied with the remand instructions from our prior decision, and its decision that termination was an appropriate sanction for the plaintiff was not arbitrary or unreasonable.

¶ 2    This case stems from Sheriff Thomas J. Dart's request to terminate Steven Cruz as a correctional officer with the Cook County Department of Corrections (CCDOC), based on Officer Cruz's alleged use of excessive force against a detainee. After an administrative hearing, the Cook County Sheriff's Merit Board (Merit Board or Board) issued a decision granting the Sheriff's

request to terminate Officer Cruz, and the circuit court affirmed the Board's decision. On our first review of this case, we affirmed the Board's finding that Officer Cruz used excessive force to subdue a detainee, but remanded for reconsideration of whether termination was the appropriate sanction. *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶¶ 1, 61-63. On remand, the Board again found that termination was appropriate, and the circuit court affirmed the Board's decision.

¶ 3    Officer Cruz now appeals the Board's decision for the second time, asking us to set aside or reverse that decision because, he argues, the Board's conclusion that termination of his employment was warranted was arbitrary and unreasonable. For the following reasons, we affirm.

¶ 4                                   I. BACKGROUND

¶ 5    We discussed the facts and procedural history leading up to Officer Cruz's first appeal in detail in our decision resolving that appeal. *Id.* ¶¶ 3-23. We now focus on the facts that are relevant to the issues before us on this appeal, including the testimony of witnesses to the incident between Officer Cruz and the detainee and evidence regarding the amount of force used.

¶ 6    The Sheriff's request to terminate Officer Cruz was based on the allegation that, on January 13, 2012, while working in the receiving classification and diagnostic center located at 2700 South California Avenue, Officer Cruz used excessive force against detainee Levi Heard by twice pushing Mr. Heard, and by "deploying Oleoresin Capsicum ('OC') spray" directly into Mr. Heard's face and eyes "without warning" as Mr. Heard was being held by another correctional officer in a headlock. In addition, the Sheriff alleged that Officer Cruz omitted from his report that he pushed Mr. Heard twice and that he deployed the OC spray without warning, and that he falsely reported that Mr. Heard was attempting to escape when Officer Cruz used the OC spray.

¶ 7                          A. The Merit Board Hearing

¶ 8    Several joint exhibits were introduced at the hearing on these allegations, including Officer

Cruz's use of force report about the incident and his incident report, and a summary from Officer Cruz's interview with the Office of Professional Review (OPR). The Sheriff also introduced a video recording of the incident into evidence. That video recording does not include any audio, as the Commissioner conducting the hearing made clear on the record. As we explained previously, the video recording reflects the following:

> "Beginning at approximately 9:10 during the video's running time, as Mr. Heard is seen walking, Officer Cruz gestures at Mr. Heard from a distance, walks up to Mr. Heard, and then pushes Mr. Heard with enough force to cause Mr. Heard to move backwards a couple of feet. Officer Cruz then communicates with Mr. Heard while standing toe-to-toe, and when Mr. Heard attempts to move around Officer Cruz to the officer's left, the officer pushes Mr. Heard with two hands again. Mr. Heard then throws down an object and walks to Officer Cruz's right while removing his jacket. As Mr. Heard turns to face Officer Cruz—who has followed Mr. Heard—while also attempting to remove his hooded sweatshirt, Officer Vukmarkaj puts Mr. Heard into a headlock with one arm and drags Mr. Heard away from Officer Cruz. It does not appear that Mr. Heard is actively struggling as Officer Vukmarkaj drags him. Officer Cruz follows Mr. Heard as he is dragged away and then, while Mr. Heard is still in a headlock, Officer Cruz walks up to Mr. Heard and sprays Mr. Heard directly in the face with the OC spray. The incident lasts approximately 23 seconds in total, and approximately 17 seconds from the first push to the deployment of the OC spray." *Id.* ¶ 7.

¶ 9     Officer Leka Vukmarkaj, who was the other officer involved in the incident, testified that he heard a verbal exchange between Officer Cruz and Mr. Heard, then walked toward that "verbal commotion." Officer Vukmarkaj testified that as he approached, he saw Mr. Heard "get into a

close proximity" to Officer Cruz and that it appeared Mr. Heard made contact with Officer Cruz, chest to chest. Officer Vukmarkaj said that as the verbal exchange continued, he saw Mr. Heard "seemed agitated" and "physically intervened by pulling the inmate away from Officer Cruz." Officer Vukmarkaj testified that while he pulled Mr. Heard away from Officer Cruz, Mr. Heard attempted to resist being walked backwards by stiffening his upper body; Officer Vukmarkaj said that Mr. Heard was "[n]ot so much [going] forward as to try to not necessarily go with my attempt to pull him backwards." Officer Vukmarkaj said he did not consider Mr. Heard to be compliant before the OC spray was deployed, but said that Mr. Heard stopped resisting after being sprayed. Officer Vukmarkaj said he was hit with OC spray along the length of his forearm, and Officer Cruz was affected by "secondary exposure, lingering particles of the OC spray in the air."

¶ 10    When asked about his own report, Officer Vukmarkaj agreed he documented that Mr. Heard had attempted to escape from him. When asked to explain what he meant by that, Officer Vukmarkaj said, "as I was physically restraining him and trying to pull him away from Officer Cruz," Mr. Heard "stiffened his body and did not willingly go backwards with me as I was attempting to pull him away from Officer Cruz."

¶ 11    Officer Cruz testified that he had worked as a correctional officer from 2006 until July 2015, and had never been disciplined for excessive force or misconduct. Officer Cruz testified about an incident that occurred in May 2010, explaining that an agitated inmate grabbed him by the neck and pushed him down, resulting in Officer Cruz suffering swelling and bruising to his brain. Officer Cruz said he was in the intensive care unit of a hospital for several days and off work for several months. He also said he was diagnosed with post-traumatic stress disorder (PTSD) and that it was recommended he not have inmate contact upon his return to work. According to Officer Cruz, however, when he returned to work, nothing was done to implement that recommendation.

Officer Cruz agreed that incidents requiring the use of force were common, saying "[e]very day there's practically a use of force."

¶ 12    Officer Cruz testified that leading up to the incident involving Mr. Heard, he heard officers ordering Mr. Heard to the "bullpen" and that Mr. Heard was "already agitated" when Officer Cruz also directed him to the bullpen. Officer Cruz said Mr. Heard "spat out some words like *** '[s]hut the f*** up, b****,' " and when Officer Cruz approached to walk Mr. Heard to the bullpen, Mr. Heard bumped Officer Cruz with his chest. Officer Cruz said that he pushed Mr. Heard "to keep his distance from me. And he just kept going at the mouth, and I kept telling him, Sir, relax, relax, you're going to get sprayed, you're going to get sprayed, and he just didn't want to hear it." Mr. Heard then attempted to get around Officer Cruz, and Officer Cruz pushed Mr. Heard back toward where he knew other officers were standing. After this second push, Officer Cruz said Mr. Heard "came back at" him. It was at that time that Officer Vukmarkaj grabbed Mr. Heard across the shoulder and pulled Mr. Heard back, but according to Officer Cruz, Mr. Heard was still struggling to get out of Officer Vukmarkaj's grip. Officer Cruz said he warned Mr. Heard to "quit resisting, I'm going to spray you, quit resisting," and then he deployed the OC spray because Mr. Heard would not stop fighting. Officer Cruz testified that the spray allowed the officers to gain control of the situation. Officer Cruz said that he issued multiple warnings to Mr. Heard before he used the OC spray.

¶ 13    Officer Cruz did not write his initial reports because some of the OC spray had hit him in his eyes and he temporarily lost vision and needed to be decontaminated. Officer Vukmarkaj "did most of the writing," and read the reports to Officer Cruz before Officer Cruz signed them. Officer Cruz agreed that nowhere in the narrative section did it mention a second push. Officer Cruz also agreed that he did not tell Officer Vukmarkaj to change anything in the reports, explaining "I felt

that, you know, when he—he even—it's not like we left out I pushed him, I—I figured he had put in there that we had pushed him twice, but he did put—put down that I did push him. I mean, I never intentionally tried to leave it out." Officer Cruz did not have access to the video recording when he signed the reports, and said when he later read the reports he "felt like [they] had covered everything."

¶ 14    Officer Cruz first became aware of the excessive force accusation against him when he was called in for an OPR interview on March 10, 2014. Officer Cruz testified that he did not intentionally leave anything out of his reports or his statement to OPR, and said that his actions against Mr. Heard were not intended to be punitive or retaliatory.

¶ 15                              B. The Merit Board's Initial Decision

¶ 16    On May 2, 2016, the Merit Board issued its initial decision in this matter, finding that (1) "Officer Cruz 'had an opportunity to deescalate the situation,' " (2) "no evidence showed Officer Vukmarkaj 'had any type of struggle to walk [Mr. Heard] away,' " and (3) "Officer Vukmarkaj was 'in control of [Mr. Heard] when Officer Cruz sprayed him with OC spray.' " *Id.* ¶ 21. The Board granted the Sheriff's request to terminate Officer Cruz, effective July 30, 2014, finding that Officer Cruz "violated the rules and regulations of the Cook County Sheriff's Office and the Merit Board."

¶ 17    Officer Cruz filed a complaint for administrative review on May 23, 2016 (case No. 16 CH 7062), and the circuit court affirmed the Board's decision.

¶ 18    Officer Cruz appealed to this court (case No. 1-17-0915), arguing in relevant part that (1) the Board's findings were against the manifest weight of the evidence and clearly erroneous, (2) the Board's conclusion that termination was appropriate was arbitrary, unreasonable, and unduly harsh, and (3) the Board's decision was untimely and should be barred by *laches*. *Cruz v.*

*Dart*, 2019 IL App (1st) 170915, ¶ 1. We concluded that the Board's finding that Officer Cruz used excessive force was not against the manifest weight of the evidence or clearly erroneous. *Id.* ¶ 43. We also found that the doctrine of *laches* did not apply. *Id.* ¶ 55.

¶ 19    As to the Board's decision that termination was warranted, however, we found that the written decision did not contain findings demonstrating that cause existed for that sanction. *Id.* ¶ 60. We thus remanded the case for the Board to "give full consideration as to the appropriate sanction, in light of the facts in this case," and highlighted five facts in particular that we believed warranted this reconsideration: (1) the entire incident lasted only 23 seconds; (2) over two years went by before the incident was investigated; (3) Officer Cruz testified that he was diagnosed with PTSD as a result of a prior incident and given "a recommendation of no inmate contact"; (4) the Board made no finding that the Sheriff's allegation that Officer Cruz filed a false report was supported by any evidence; and (5) Officer Cruz lacked any prior disciplinary history. *Id.* We further explained:

> "We have recognized that where, as here, we question the sanction that an administrative agency has imposed, our role is to remand the case so that the agency can address our concerns and consider the broad range of disciplinary options, which include reinstatement and back pay. [Citation.] We do so in this case." *Id.* ¶ 61.

¶ 20    We issued that decision as an unpublished order under Illinois Supreme Court Rule 23 (eff. April 1, 2018) on December 17, 2018. Pursuant to a motion to publish filed by the Sheriff, we then withdrew the Rule 23 order and issued our decision as a published opinion on January 22, 2019.

¶ 21                    C. The Board's First Decision on Remand

¶ 22    By January 30, 2019, the Board had issued a new decision in this case without any advance notice to Officer Cruz. In response to that decision, Officer Cruz filed a motion asking this court

to enforce our initial decision.

¶ 23    We denied the motion as premature, noting that the Board lacked jurisdiction to issue an opinion because the mandate of this court had not yet issued. The Board's new decision was thus also "premature" and "of no force or effect."

¶ 24                            D. The Board's Second Decision on Remand

¶ 25    The Board issued another decision on September 12, 2019. This decision was almost identical to the one prematurely issued by the Board in January 2019. Neither decision mentioned the specific factors cited by this court, but the Board did make additional findings of fact in support of termination, including that Officer Cruz also used excessive force against Mr. Heard by pushing him twice before deploying the OC spray, that Officer Cruz filed false reports because he failed to document that he pushed Mr. Heard twice or that he deployed OC spray at Mr. Heard without warning, and that he falsely documented in his reports and claimed in his OPR interview that Mr. Heard was trying to escape at the time he deployed the OC spray. The Board also, in contrast to its original decision, cited specific rules and general orders that were violated, concluding:

> "Based on the evidence presented, and after assessing the credibility of witnesses and the weight given to the evidence in the record, the Board finds, by a preponderance of the evidence, that Correctional Officer Steven Cruz violated Sheriff's orders, 11.2.1.0, 11.2.20, General Orders 24.9.1.0 and 9.21 and Article X Paragraph B of the Merit Board Rules and Regulations and that termination is warranted, effective August 4, 2014."

¶ 26    On October 3, 2019, Officer Cruz filed his second complaint for administrative review in the circuit court (case No. 19 CH 11461). Officer Cruz argued that reversal of the Board's post-remand decision was required because, in relevant part, it violated our instructions on remand, was against the manifest weight of the evidence and clearly erroneous, and the discipline imposed was

arbitrary and capricious.

¶ 27    On July 24, 2020, the circuit court reversed the September 2019 decision and remanded for the Board to "address all of the factors that the Appellate Court outlined in its January 2019 Opinion."

¶ 28                            E. The Board's Third Decision on Remand

¶ 29    The Board issued the "Corrected Decision" at issue in the present appeal on October 15, 2020, addressing each of the five possibly mitigating facts we directed the Board to specifically consider in our 2019 opinion. *Cruz*, 2019 IL App (1st) 170915, ¶ 60. The Board found that the 23-second time span of the incident was not mitigating because Officer Vukmarkaj had "complete control" of Mr. Heard when Officer Cruz deployed the OC spray. The Board also concluded that Officer Cruz's argument that he had no time to "pause and think" before using the spray was not supported by the evidence, as the video showed that Mr. Heard was not moving while he was being held by Officer Vukmarkaj and "Officer Vukmarkaj was able to set his water bottle down while Mr. Heard remained compliant." According to the Board, it was "counter-intuitive that Officer Vukmarkaj had the time to set down his drink, but that [Officer Cruz] did not have sufficient time to properly assess the situation." The Board also pointed out that correctional officers are trained to act quickly in dangerous situations and nothing about this incident was unique or unexpected.

¶ 30    The Board indicated that it was "dismayed" by the two-year delay between when the incident took place and when formal charges were brought against Officer Cruz, but stated it did "not have any control over the Sheriff's decision to investigate or charge an employee." Rather, the Board noted that it only reviews the case before it to "determine whether or not the plead[ed] infraction is cause for termination." The Board maintained that termination was the proper sanction for Officer Cruz because he "used excessive force against a detainee, and he should not be returned

to a position to harm others." The Board concluded, "[h]ad the Sheriff acted with diligence and brought these charges soon after the incident, the decision would remain the same. The fact that two years elapsed before the charges [did] not mitigate [Officer Cruz's] actions."

¶ 31    The Board also did not find Officer Cruz's testimony that he was diagnosed with PTSD after a prior incident with an inmate to be mitigating because Officer Cruz "failed to offer any medical evidence that he in fact suffered from PTSD, was under the care of a medical professional, or that PTSD affected him during the incident."

¶ 32    In response to our observation that it had previously made no finding that Officer Cruz filed false reports, the Board in its October 2020 decision did make that finding. In support, the Board noted that in the narrative sections of three reports filed after the incident—a Use of Force Report, an Incident Report, and an Inmate Disciplinary Report—Officer Cruz did not report that he pushed Mr. Heard twice with both hands, or that he deployed OC spray in Mr. Heard's face without warning while Mr. Heard was in a headlock. The Board stated that Officer Cruz's reports did "not accurately reflect the incident as captured by video tape." The Board also found that Officer Cruz falsely reported to OPR investigators in March 2014 that he warned Mr. Heard to " 'stop resisting' " or Mr. Heard would be " 'sprayed with OC' " and that Mr. Heard continued to resist and tried to escape from Officer Vukmarkaj's hold. According to the Board, "[e]ach of these statements are contradicted by the videotape."

¶ 33    Finally, the Board determined that Officer Cruz's lack of disciplinary history, "while admirable, does not mitigate his actions in this case. [Officer Cruz] used excessive force against a detainee who was complying, and in doing so deployed OC spray on both the detainee and a fellow correctional officer. This alone is grounds for termination."

¶ 34    The Board said that it carefully considered the evidence presented, and that "despite the

possible mitigation identified by the Appellate Court in the five factors set forth above, termination is an appropriate sanction for [Officer Cruz's] actions." In conclusion, the Board stated:

> "Based on the evidence presented, and after assessing the credibility of witnesses and the weight given to the evidence in the record, the Board finds, by a preponderance of the evidence, that Correctional Officer Steven Cruz violated Sheriff's Orders 11.2.1.0 and 11.2.20, General Orders 24.9.1.0 and 9.2.1, and Article X Paragraph B of the Merit Board Rules and Regulations, and that termination is warranted effective August 4, 2014. Officer Cruz's continued employment is detrimental to the CCDOC based on his actions in this case."

¶ 35　On January 12, Officer Cruz filed a motion to review the Board's October 2020 decision in the circuit court, again arguing that the Board's findings were against the manifest weight of the evidence.

¶ 36　On March 8, 2021, the circuit court affirmed the Merit Board's October 2020 decision.

¶ 37　This appeal followed.

¶ 38　　　　　　　　　　　　　II. JURISDICTION

¶ 39　The circuit court affirmed the decision of the Merit Board on March 8, 2021, and Officer Cruz filed a timely notice of appeal from that decision on March 16, 2021. This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. Jan. 1, 2015), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 40　　　　　　　　　　　　　III. ANALYSIS

¶ 41　The sole issue on appeal is whether the Board's conclusion that Officer Cruz's termination was warranted should be reversed. We use a two-step process when reviewing an administrative

agency's discharge of an employee. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009). "[F]irst, we determine whether the agency's findings of fact are contrary to the manifest weight of the evidence, and then we determine whether the agency's findings of fact provide a sufficient basis for its conclusion that there was cause for the discharge." *Cruz*, 2019 IL App (1st) 170915, ¶ 57.

¶ 42 Cause has been defined by our supreme court as "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." (Internal quotation marks omitted.) *Walsh v. Board of Fire & Police Commissioners of the Village of Orland Park*, 96 Ill. 2d 101, 105 (1983). We will only overturn an agency's finding of cause to discharge an employee "if it is arbitrary and unreasonable or unrelated to the requirements of the service." *Id.*

¶ 43 In our prior decision, we concluded that the Board's finding that Officer Cruz used excessive force was not against the manifest weight of the evidence or clearly erroneous. *Cruz*, 2019 IL App (1st) 170915, ¶ 43. We now conclude that the Board's finding of cause to terminate Officer Cruz was not so arbitrary, unreasonable, or unrelated to the requirements of service that we have cause to reverse it.

¶ 44 The Board addressed the specific mitigating factors cited by us in our prior opinion. It explained why it considered none of them to be a reason to reject the Sheriff's request that Officer Cruz be terminated. While we might disagree with the Board's assessment of the significance, for example, of Officer Cruz's otherwise unblemished record, or of the fact that he had been injured recently by another detainee in the same place where this incident occurred, we must accept the Board's termination decision unless it is arbitrary or unreasonable. It is not.

¶ 45    In addition to explaining why it felt Officer Cruz should be terminated, in its post-remand decision, the Board made new factual findings. Specifically, the Board found that reports filed by Officer Cruz soon after the incident did not "accurately reflect the incident as captured by the video tape" because Officer Cruz did not document that he pushed Mr. Heard twice with both hands or deployed the OC spray without warning while Mr. Heard was being held in a headlock by Officer Vukmarkaj. Similarly, the Board found statements by Officer Cruz to the OPR investigator were also contradicted by the video recording, including his statement that that Mr. Heard continued to fight and resist against and tried to escape Officer Vukmarkaj's hold and that Officer Cruz told Mr. Heard to stop resisting or he would be sprayed.

¶ 46    Officer Cruz contests these new findings, arguing that the Board relies heavily on the video, which does not include sound, and ignores the testimony of Officers Cruz and Vukmarkaj. We agree with Officer Cruz in part. Because there is no sound, one cannot determine from the video whether Officer Cruz told Mr. Heard to stop resisting. Officer Cruz testified, without contradiction, that he did warn Mr. Heard before using the OC spray. We agree with Officer Cruz that the Board should have considered the testimony as well as the video recording and acknowledged the fact that the recording had no sound.

¶ 47    However, this unsupported factual finding by the Board does not change the result on this appeal. First, the Board's finding that Officer Cruz's reports were false was supported by the record, at least in part, since it is clear from the video recording that he pushed Mr. Heard twice, which he did not report. There is also some evidence to support the Board's finding that Officer Cruz's documentation in his reports and his statement to OPR that Mr. Heard was actively trying to escape when Officer Cruz used the OC spray were untrue. Both the video recording and Officer Vukmarkaj's testimony suggest that this was not the case. We acknowledge that Officer

Vukmarkaj also documented in his report that Mr. Heard was trying to escape from his hold, but in clarifying that statement, the officer said he meant that Mr. Heard "had stiffened his body and did not willingly go backwards" with him. Thus, we conclude that there was some support for the Board's factual findings that Officer Cruz filed false reports and made false statements, and these findings provide additional support for its decision to terminate his employment.

¶ 48     In short, in its third decision after we remanded the case, the Board explained why it found cause for termination. As we have recognized repeatedly, "[t]he Merit Board, not the reviewing court, is in the best position to determine the effect of an employee's conduct on the agency." (Internal quotation marks omitted.) *Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893, ¶ 87. A finding by the Board that there was cause for termination can be overturned only where it is "arbitrary, unreasonable or unrelated to the requirements" of the Sheriff's Department. *Walsh*, 96 Ill. 2d at 105. We simply cannot find on this record that the Board's decision should be overturned on any of these bases.

¶ 49     In support of his argument that termination was improper in this case, Officer Cruz relies on *Walsh*, 96 Ill. 2d at 108, where our supreme court vacated the board's discharge of the plaintiff and remanded the case for the introduction of "further evidence that [was] relevant to the issue of whether [the plaintiff's] misconduct was substantially the result of the psychiatric problems that led to his prior medical suspension." But the facts and circumstances in *Walsh* are so unique as to be wholly distinguishable from the facts in this case. In *Walsh*, the plaintiff, a police sergeant, "was on medical leave for treatment of a psychiatric problem" and receiving a disability pension when he discharged his weapon inside his home. *Id.* at 102-04. He argued before our supreme court that it was "arbitrary and unreasonable to grant a medical suspension and disability pension when an officer has psychiatric problems and later discharge him and take away his pension when the same

psychiatric condition causes him to act in a manner that warrant[ed] discharge." *Id.* at 107-08. Based on those unique facts, the supreme court chose to exercise its discretion and remand the case back to the board for additional evidence. *Id.* at 108. We do not believe the same result is appropriate in this case.

¶ 50 Officer Cruz also relies on *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308. But the facts of *Roman* are also quite different. There, the appellate court reversed the terminations of three correctional officers—one because the court vacated all findings against the officer, and the other two because the court found that termination was "a grossly disproportionate sanction" where other officers guilty of similar or more "egregious" violations were only suspended or demoted. *Roman*, 2014 IL App (1st) 123308, ¶¶ 9, 20, 55-56, 122-136, 148, 151-152. In *Roman*, an investigator testified that "in his experience, the usual discipline" for the violations at issue was a three- to five-day suspension, and the other officers in that case had received 40- and 45-day suspensions. *Id.* ¶¶ 146, 149. This aligns with other decisions in which it is clear from the record that the termination imposed was not in keeping with the punishment imposed in other similar cases. See *Wilson v. Board of Fire*, 205 Ill. App. 3d 984, 992 (1990) (finding one police officer's discharge to be disproportionate when another officer received a 30-day suspension and both sanctions stemmed from the same altercation between the two officers); *Fox v. Illinois Civil Service Comm'n*, 66 Ill. App. 3d 381, 392 (1978) (finding no cause for discharge where one mitigating factor was that the department used "selective enforcement" and "arbitrary discipline" with respect to the charge of profanity). Unlike those cases, nothing in this record suggests that Officer Cruz's termination is disproportionate to sanctions imposed in other similar cases.

¶ 51 Officer Cruz also argues that, based on Officer Vukmarkaj's testimony that Mr. Heard

actively resisted his efforts to move Mr. Heard backwards, Mr. Heard was in effect "an active resist[e]r which would warrant the use of OC spray in th[at] situation." This appears to be a challenge to the Board's determination that Officer Cruz used excessive force against Mr. Heard. Any attempt by Officer Cruz to challenge the Board's findings with respect to his use of excessive force at this point is precluded by the fact that we have already issued an opinion holding that this finding was not against the manifest weight of the evidence. Under the law-of-the-case doctrine, "where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question for all subsequent stages of the suit." *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 911 (2007). Accordingly, "the questions decided and determined by [this court] on the first appeal are not open for re-consideration on the second appeal." (Internal quotation marks omitted.) *Relph v. Board of Education of DePue Unit School District No. 103 of Bureau County*, 84 Ill. 2d 436, 443 (1981).

¶ 52      In sum, we will not substitute our judgment for that of the Board regarding when termination is appropriate. We do not find on this record that the Board's decision was so arbitrary or unreasonable that it cannot stand. Therefore, we affirm.

¶ 53                                    IV. CONCLUSION

¶ 54      For the foregoing reasons, we affirm the judgment of the circuit court and the decision of the Board.

¶ 55      Circuit court judgment affirmed.

¶ 56      Board decision affirmed.