2022 IL App (1st) 201188-U

FIFTH DIVISION
MARCH 11, 2022

No. 1-20-1188

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JOSEPHINE CARTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 12907 |
| THOMAS J. DART, Sheriff of Cook County, | ) | |
| COOK COUNTY, and COOK COUNTY SHERIFF'S | ) | |
| MERIT BOARD, | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the trial court's judgment affirming the merit board's disciplinary decision.

¶ 2    The plaintiff-appellant, Josephine Carter, filed a complaint for administrative review in the circuit court of Cook County against the defendants-appellees, Thomas J. Dart, as the Sheriff of Cook County, Cook County, and the Cook County Sheriff's Merit Board (merit board). The complaint sought review of the merit board's disciplinary decision which found that Ms. Carter

failed to follow numerous Sheriff's Office policies. She was terminated from her position as a deputy sheriff. The circuit court affirmed the merit board's disciplinary decision. Ms. Carter now appeals to this court. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                          BACKGROUND

¶ 4     In 1998, Ms. Carter was appointed as a deputy sheriff by the Sheriff of Cook County and was assigned to the courthouse services division. On November 22, 2017, the Sheriff of Cook County filed a disciplinary complaint with the merit board, seeking to terminate Ms. Carter's position as a deputy sheriff. The disciplinary complaint arose out of the May 2, 2017, sexual assault of a female detainee, B.D.[1] The sexual assault was committed by two male detainees, Hamidullah Tribble and Nelon Drake, who were under the supervision of Ms. Carter and her partner, Deputy Marvin Buchanan, in courtroom 105 at the Markham County Courthouse. Courtroom 105 shares attached holding cells and restroom cells with courtroom 106, which are adjoining and accessible through a corridor. B.D. was a detainee in courtroom 106 on May 2, 2017, and she was placed in restroom cell 106. While B.D. was still in restroom cell 106, detainees Tribble and Drake were also placed in restroom cell 106. The two male detainees then sexually assaulted B.D. inside restroom cell 106.

¶ 5     The disciplinary complaint alleged that on May 2, 2017, shortly after the sexual assault occurred, Ms. Carter learned that one of her male detainees had been in restroom cell 106, that Deputy Buchanan had been called to remove the male detainee from restroom cell 106, and that two male detainees alleged that they had been "forced to have sex with the female [detainee] in

_____

[1]Due to the nature of the offense committed against B.D., we decline to include her full name in this order and will refer to her by her initials.

restroom cell 106." The complaint further alleged that Ms. Carter subsequently spoke with B.D. and "knew there was a possibility that a criminal act had been committed in restroom cell 106," but "did not immediately notify her chain of command" and "did not immediately report her knowledge until [she] was asked to write a report on May 3, 2017." Additionally, the complaint alleged that Ms. Carter falsely reported that on May 2, 2017, she had completed all of the required 15-minute prisoner safety checks for courtroom 105, "though [she] did not conduct any of the safety checks *** as required by the Detainee Safety Check Policy." According to the complaint, Ms. Carter was:

> "at a minimum, grossly negligent in her duties when she failed to properly supervise the [detainees] in her custody and when she failed to properly conduct 15-minute prisoner safety checks. Specifically, when Ms. Carter failed to properly supervise the two male [detainees] who sexually assaulted a female [detainee] in another cell, restroom cell 106, one after the other."

The complaint asserted that Ms. Carter had failed to be "alert, attentive, and vigilant" in her duties over detainees Tribble and Drake, which led to the sexual assault of B.D.

¶ 6 The complaint explained that Ms. Carter was interviewed by investigators from the Cook County Sheriff's Office of Professional Review (OPR) on July 17, 2017, and alleged that she was "untruthful" during that interview. Specifically, the complaint stated that Ms. Carter initially told OPR investigators that she conducted all the 15-minute prisoner safety checks on May 2, 2017, but then she later admitted that she neither conducted nor observed the 15-minute prisoner safety checks. Ms. Carter further told investigators that she had forgotten that on May 2, 2017, Deputy Buchanan received a phone call from a deputy sheriff assigned to courtroom 106, telling him to remove a male detainee from restroom cell 106. Ms. Carter claimed that the deputies in courtroom

106 had not informed her that there was a female detainee in that courtroom that day, but at some point, she saw B.D. "pop[] her head in the window of [restroom cell 106]." She told investigators that she was not alarmed when she saw B.D. and later spoke to her, even though she "knew that one of [the] male [detainees] had been in restroom cell 106."

¶ 7      The disciplinary complaint alleged that through Ms. Carter's actions related to the May 2, 2017, sexual assault of B.D., she violated: (1) Cook County Court Services Policy 321, Conduct; (2) Cook County Court Services Policy 900, Prisoner Security Procedure; (3) Cook County Court Services Policy 903, Prison Rape Elimination; (4) Cook County Court Services Policy 1100, Courtroom Operations Procedure; and (5) Article X, Paragraph B of the Merit Board's Rules and Regulations. The complaint asked the merit board to remove Ms. Carter from the Cook County Sheriff's Office.

¶ 8      The Sheriff of Cook County also filed a similar disciplinary complaint against Deputy Buchanan, as well as the two deputies who were assigned to courtroom 106 on May 2, 2017, Deputies Timothy Houlihan and Sheila Kalina. The Sheriff moved to consolidate all four disciplinary actions, which the merit board allowed, since they arose out of the same incident.

¶ 9      In November 2018, the merit board began conducting evidentiary hearings in the matter. The following relevant evidence was presented at the evidentiary hearings.

¶ 10      OPR Investigator Eyman Zabadneh testified that he was assigned to investigate the May 2, 2017, sexual assault of B.D. at the Markham County Courthouse. As part of his investigation, he interviewed Ms. Carter, who told him that for the 15-minute prisoner safety checks, she usually stood in the doorway of the courtroom and just looked into the cells. She then would initial the prisoner safety check sheet to indicate that the detainees assigned to her courtroom were inside their cells. Investigator Zabadneh testified that on May 2, 2017, between 10:20 a.m. and 1:45 p.m.,

the prisoner safety check sheet for courtroom 105 had been initialed by Ms. Carter every 15 minutes to indicate that the detainees assigned to courtroom 105, including detainees Tribble and Drake, were located inside holding cell 105.

¶ 11    Ms. Carter further told Investigator Zabadneh that when there is a female detainee in a courtroom, the deputies in that courtroom usually let the adjourning courtroom know, but she was never informed that there was a female detainee in courtroom 106 on May 2, 2017. Ms. Carter claimed that she did not realize that there was a female detainee in courtroom 106 until later in the day, when she saw B.D. inside restroom cell 106. She told Investigator Zabadneh that she saw B.D. in restroom cell 106 within ten minutes of Deputy Buchanan receiving a phone call about a male detainee being inside restroom cell 106. Throughout Investigator Zabadneh's investigation, he never found out if Ms. Carter ever reported to anyone else that she saw B.D. in restroom cell 106 shortly after one of her male detainees had to be removed from that same restroom cell. He testified that this violated the Sheriff's Office Conduct Policy.

¶ 12    Ms. Carter verified to Investigator Zabadneh that she completed an incident report on May 3, 2017, a day after the sexual assault. Investigator Zabadneh testified that Ms. Carter's incident report did not mention seeing B.D. inside restroom cell 106. Her incident report also did not mention Deputy Buchanan receiving a phone call about a male detainee being inside restroom cell 106. Investigator Zabadneh confirmed that Sherriff's Office policy requires incident reports to be as specific as possible.

¶ 13    Investigator Zabadneh further testified that the Prison Rape Elimination Policy is relevant in cases involving sexual assaults. He explained that that policy requires a Cook County Sheriff's Office employee to report, "as soon as practicable," any "knowledge, suspicion, or information regarding an incident of sexual abuse," through the chain of command, even if the employee has

only "suspect[ed] something may have happened." Investigator Zabadneh testified that he found Ms. Carter violated the Prison Rape Elimination Policy by not reporting anything regarding the sexual incident until the following day, and even then, only after she had been ordered to do so. Despite writing the report, "she did not report to what she witnessed or had knowledge of," including the phone call Deputy Buchanan received or that she saw B.D. inside restroom cell 106.

¶ 14    Deputy Gregory Hart testified that on May 2, 2017, he was working in male lockup at Markham County Courthouse. That day, detainees Tribble and Drake approached him and Sergeant Garrett and said, "the lady upstairs raped [them]." Sergeant Garrett ordered Deputy Hart to take statements from detainees Tribble and Drake. In the interviews with Deputy Hart, detainee Drake told him that he asked Deputy Kalina to use the restroom, and she took him from the holding area and placed him in restroom cell 106. And detainee Tribble stated that he asked Deputy Houlihan to use the restroom, who then placed him in restroom cell 106.

¶ 15    Ms. Carter testified that on May 2, 2017, she was assigned to courtroom 105[2] with her partner, Deputy Buchanan. Her responsibilities included "[c]ourthouse security, taking detainees to and from lockup and to and from court, execute arrest warrants, and courtroom security." Ms. Carter testified that it was her "normal practice" to have her male partner visually inspect the detainees in the holding cells as required and "relay back to [her] that everything is ok," and then Ms. Carter would initial the 15-minute prisoner safety check sheet. She confirmed that is what she and Deputy Buchanan did on May 2, 2017.

¶ 16    According to Ms. Carter, she saw B.D. "pop[] her head up" in restroom cell 106 as Ms. Carter was transporting her detainees to lockup. Prior to that, she had been unaware that there was

---

[2]Parts of Ms. Carter's testimony stated that she was assigned to courtroom 106, but other parts of her testimony, as well as the rest of the record and Ms. Carter's brief on appeal, indicate that she was actually assigned to courtroom 105.

a female detainee in courtroom 106. When Ms. Carter saw B.D. inside restroom cell 106, B.D. asked Ms. Carter, "When am I going to go down?" to which Ms. Carter responded that she would retrieve one of B.D.'s deputies. She then went to find Deputy Kalina to retrieve B.D. from restroom cell 106.

¶ 17 Ms. Carter testified that she did not have any knowledge about detainees Tribble and Drake being placed in restroom cell 106. She stated, though, that she was with Deputy Buchanan when he received a phone call about removing a male detainee from restroom cell 106 approximately 15 minutes before she saw B.D. in restroom cell 106.

¶ 18 After Ms. Carter finished transporting her detainees to lockup, she learned about the sexual assault from Deputy Buchanan. He told her that he had been instructed to write a report about it. Ms. Carter was not ordered to write a report until the following day.

¶ 19 Ms. Carter testified that she wrote a report on May 3, 2017, but did not include in the report, the phone call that Deputy Buchanan received about a male detainee in restroom cell 106 or her seeing B.D. in restroom cell 106 approximately 15 minutes later. She did not think that information was "pertinent."

¶ 20 On October 25, 2019, the merit board issued a written decision. Reciting all of the evidence and assessing the credibility of the witnesses, the merit board found Ms. Carter violated: "Cook County Court Services Department Policy *** 321.2, 321.3, 321.4, 321.5, 322.5.2, 321.5.5[;] Cook County Court Services Department Policy *** 900.2, 900.3, 900.3.2, 900.3.3[;] Cook County Core Services Department Policy *** 903.2, 903.3, 903.9[;] Cook County Court's Department *** 1100.2, 1100.3, 1100.3.8[;] and Merit Board Rules and Regulations Article X, paragraph B 3." The merit board found that Ms. Carter was "grossly negligent" in allowing B.D. to be sexually assaulted in restroom cell 106, because she failed to properly monitor the courtroom holding cells,

failed to properly inspect the cells for the 15-minute prisoner safety checks, and falsely claimed that the 15-minute prisoner safety checks were properly done. Further, the merit board found that Ms. Carter "falsely filed reports that she complied with the requirements to conduct proper safety checks and was untruthful to OPR investigators regarding the circumstances surrounding the incident." The written order concluded that Ms. Carter "failed to be alert and attentive and vigilant in her duties which led to the sexual assault of" B.D. The merit board ordered Ms. Carter to be terminated from her position as a deputy in the Cook County Sherriff's Office.

¶ 21 Ms. Carter sought review of the merit board's decision in the trial court. The trial court affirmed the merit board's ruling. Ms. Carter subsequently appealed to this court, and now asks us to review the merit board's decision.

¶ 22                                    ANALYSIS

¶ 23 We note that we have jurisdiction to consider this matter, as Ms. Carter filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 24 Ms. Carter presents the following issues for our review: (1) whether the merit board's finding that she violated numerous policies was against the manifest weight of the evidence; (2) whether the merit board's decision to terminate Ms. Carter was arbitrary; (3) whether her counsel operated under a conflict of interest during the evidentiary hearings; and (4) whether the merit board violated the Open Meetings Act.

¶ 25 Ms. Carter first argues that the merit board's finding that she violated numerous policies was against the manifest weight of the evidence. She claims that the evidence shows that she "maintained prisoner security at all times on May 2, 2017." She emphasizes B.D. was not assigned to her courtroom and that she was not even aware that there was a female in the adjourning courtroom. Additionally, Ms. Carter claims that she had no knowledge that two male detainees

had been placed in restroom cell 106 with a female detainee. Ms. Carter further argues that there are "no requirements" for deputies completing the 15-minute prisoner safety check sheet, and that it was "customary" for one deputy to conduct the checks while the other deputy initialed the check sheet. She also asserts that she was truthful with OPR investigators regarding the incident, even though she admits she left some specific details out of her initial report. Moreover, Ms. Carter argues that, under these facts, the merit board's decision to terminate her position was unreasonable.

¶ 26    In an administrative review case, we review the decision of the administrative agency, not the trial court's judgment. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. Our review of an administrative agency's decision to terminate an employee, such as in this case, is a two-step process. *Id.*, ¶ 68. The first step in our analysis is to determine whether the agency's findings of fact are against the manifest weight of the evidence. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009). The second step in our analysis is to determine if the agency's findings of fact provide a sufficient basis for its conclusion that cause for discharge exists. *Id.* Our supreme court has made clear that "considerable deference must be afforded to an administrative finding of 'cause' for discharge, and it is not to be overturned unless it is arbitrary and unreasonable or unrelated to the requirements of the service." *Id* (citing *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983)).

¶ 27    In the instant case, the merit board found that Ms. Carter violated the following policies, in addition to subsections within those policies: (1) Cook County Court Services Policy 321, Conduct; (2) Cook County Court Services Policy 900, Prisoner Security Procedure; (3) Cook County Court Services Policy 903, Prison Rape Elimination; (4) Cook County Court Services Policy 1100, Courtroom Operations Procedure; and (5) Article X, Paragraph B of the Merit

Board's Rules and Regulations. The summation of these policies requires: detainees to be separated by gender; all detainees to be visually inspected every 15 minutes; the prompt protection of any person who has been sexually abused or is at substantial risk of imminent sexual abuse; and members of the Sheriff's Office to follow all Sheriff's orders, policies, and rules, and conduct themselves in a professional manner.

¶ 28    Reviewing the record on appeal, we cannot say that the merit board's finding that Ms. Carter violated these policies was against the manifest weight of the evidence. Indeed, the record establishes that, under her supervision, two male detainees were placed inside restroom cell 106 with a female detainee, who was then sexually assaulted. We reject Ms. Carter's attempts to place blame on the other deputies, as it is irrelevant *who* placed detainees Tribble and Drake inside the same restroom cell as B.D. It was Ms. Carter's responsibility to ensure the safety of the courtroom to which she was assigned as well as the holding areas. This responsibility included *keeping track of the detainees* under her supervision. Significantly, the policies required Ms. Carter to visually inspect all detainees every 15 minutes, and she admitted that she did not conduct such inspections. Instead, she relied upon Deputy Buchanan to conduct the inspections. She then initialed the safety check sheet herself, as if she had done the inspections, indicating that detainees Tribble and Drake were located inside cell 105, when in fact they were inside restroom cell 106 assaulting B.D. Simply put, Ms. Carter's actions did not protect B.D. from being sexually assaulted, on which the relevant policies are focused.

¶ 29    Additionally, Ms. Carter became aware that at least one of the male detainees had to be removed from restroom cell 106, and approximately 15 minutes later, she saw B.D. inside restroom cell 106; yet she did not take any subsequent steps to inform her chain of command that something out of the ordinary had occurred. The evidence shows that Ms. Carter did not immediately file an

incident report with all the details, as she had been ordered to do. Accordingly, the merit board's finding that Ms. Carter violated numerous policies was not against the manifest weight of the evidence. See *Lopez*, 2018 IL App (1st) 170733, ¶ 70 (factual determinations are against the manifest weight of the evidence only where the opposite conclusion is clearly evident).

¶ 30    Ms. Carter further argues that the merit board's decision to terminate her was "unjust." She suggests that a lesser penalty would suffice. However, as already discussed, Ms. Carter violated several policies that she was required to follow. "It is axiomatic that an officer's violation of a single rule may constitute a sufficient basis for discharge," (*Malinowski v. Cook County Sheriff's Merit Board*, 395 Ill. App. 3d 317, 322 (2009)), and here, Ms. Carter violated *numerous* policies. Of import, Ms. Carter's violations ultimately led to the sexual assault of a female detainee. Under those circumstances, it cannot be said that the merit board's decision to terminate Ms. Carter was arbitrary. See *id* at 322–23 (this court reverses an agency's discharge decision only if it was arbitrary and unreasonable).

¶ 31    Finally, Ms. Carter makes the additional arguments that: (1) her legal counsel operated under a conflict of interest during the evidentiary hearings; and (2) the merit board's order violated the Open Meetings Act. However, Ms. Carter did not raise either of these arguments before the merit board or the trial court. And it is well established that an argument cannot be raised for the first time before this court. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212–13 (2008) (the rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts); *Sherman v. Indian Trails Public Library District*, 2012 IL App (1st) 112771, ¶ 21. Thus, Ms. Carter has forfeited these two issues and we need not address the merits of her arguments. We therefore affirm the trial court's judgment affirming the merit board's disciplinary decision to

terminate Ms. Carter based upon its finding that she violated numerous policies of the Sherriff's Office.

¶ 32                                  CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.