2023 IL App (1st) 221090

FOURTH DIVISION
Order filed: March 30, 2023

No. 1-22-1090

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOEL MIRELES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2016 CH 11288 |
| | ) | |
| THOMAS J. DART and the COOK COUNTY | ) | |
| SHERIFF'S MERIT BOARD, | ) | Honorable |
| | ) | Neil Cohen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Joel Mireles, appeals from orders of the circuit court affirming a decision of the Cook County Sheriff's Merit Board (Board) separating him from his employment as a Correctional Officer with the Office of the Cook County Sheriff and dismissing his claim for a declaratory judgment which sought findings that the Board was illegally constituted and that its decision terminating his employment as a Correctional Officer is void. For the reasons which follow, we affirm the orders of the circuit court.

¶ 2 The procedural posture of this case is not in dispute. The plaintiff was appointed as a Correctional Officer with the office of the Cook County Sheriff on July 23, 2007, and thereafter assigned to the Receiving Classification Diagnostic Center (RCDC) of the Cook County Department of Corrections (CCDOC). On March 17, 2015, Thomas J. Dart, the Sheriff of Cook County (the Sheriff), filed a complaint with the Board, alleging that the plaintiff: used excessive force against an inmate, Jabari Funches, by striking him in the head and pushing him into a wall and doorway; failed to document his use of force against Funches in three official reports he completed relating to the incident; falsely documented that Funches had raised his hands before he struck him; falsely stated in a January 31, 2014, interview that he did not see other officers kick Funches; and made other false statements regarding the incident. Based upon those allegations, the complaint charged the plaintiff with violations of the Rules and Regulations and General Orders of the CCDOC and sought his separation from employment as a Correctional Officer. A hearing on the complaint was conducted on February 4 and 5, 2016. On July 29, 2016, the Board issued its final written decision, upholding the charges and terminating the plaintiff's employment.

¶ 3 On August 26, 2016, the plaintiff filed a complaint in the circuit court for administrative review of the Board's decision, asserting, *inter alia,* that the Board's decision was against the manifest weight of the evidence and that his termination was arbitrary and capricious. The plaintiff requested an order setting aside the Board's decision, reinstating him to his position, and awarding him compensation for his losses, including back pay. On May 31, 2017, the circuit court affirmed the Board's decision, finding that the Board's factual findings were supported by the evidence and that the plaintiff's termination was neither arbitrary, unreasonable, nor capricious.

¶ 4 On June 27, 2017, the plaintiff filed a notice of appeal from the circuit court's order of May 31, 2017, which was docketed in this court as No. 1-17-1672. While that appeal was pending, the

plaintiff filed a motion in the circuit court on June 30, 2017, requesting reconsideration of the May 31, 2017, order affirming the Board's decision and raising for the first time an argument that the Board's decision was void because the Board was illegally constituted at the time of its decision terminating his employment. On the plaintiff's motion, this court entered an order on August 7, 2017, in appeal No. 1-17-1672, dismissing that appeal.

¶ 5 Thereafter, the circuit court stayed proceedings in the instant case pending the supreme court's resolution of an appeal in *Goral v. Dart*, 2020 IL 125086. Following the supreme court's decision in *Goral,* the circuit court entered an order on January 12, 2022, over the objection of the Sheriff, granting the plaintiff's oral motion for leave to file an amended complaint.

¶ 6 On January 14, 2022, the plaintiff filed a two-count complaint entitled Second Amended Class Action Complaint. Count I consisted of a repleading of the plaintiff's complaint for administrative review of the Board's decision which clearly stated that it was being pled solely for the purpose of preserving for appeal the propriety of the circuit court's order of May 31, 2017. Count II sought a declaratory judgment finding that seven members of the Board participating in the decision terminating his employment were "invalidly appointed" and declaring that the Board's decision terminating his employment is void. On June 23, 2022, the circuit court entered an order dismissing the plaintiff's Second Amended Complaint, and this appeal followed.

¶ 7 For his first issue in this appeal, the plaintiff contends that the circuit court erred in dismissing his claim for a declaratory judgment that the Board's decision terminating his employment is void due to the invalid appointment of seven of the eight members of the Board participating in the decision. The plaintiff argues that, contrary to the circuit court's determination, the *de facto* officer doctrine does not apply to validate the Board's decision. According to the plaintiff, once the defendants were put on notice by the circuit court's August 19, 2014, order in

*Taylor v. Dart,* 13 CH 26319*,* which found that the Board was illegally constituted, none of the Board's decisions issued thereafter and until the Board was legally constituted can be validated by application of the *de facto* officer doctrine. He concludes that, since the Board's decision in this case was issued after the circuit court's finding in *Taylor v. Dart* but before the Board was legally constituted, the *de facto* officer doctrine is inapplicable.

¶ 8      In support of the circuit court's dismissal of the plaintiff's claim for declaratory judgment, the Sheriff argues that, since the plaintiff failed to raise an argument that the Board was illegally constituted before the Board itself and did not raise the claim until long after the Board had issued its final decision in this case, the *de facto* officer doctrine bars any challenge to his dismissal based upon the Board's composition. According to the Sheriff, the plaintiff's arguments on this issue have been rejected by this court in *Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893. We agree. See also *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶ ¶ 28–41.

¶ 9      The *de facto* officer doctrine is an equitable doctrine that confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment to office is deficient. *Goral*, 2020 IL 125086, ¶ 71. "Under the doctrine, the acts of a person actually performing the duties of an office under color of title are valid so far as the public or third parties who have an interest in them are concerned." *Id.* The doctrine acts as defense to an attack on the acts of an officer or appointee in a collateral proceeding. *Id.* ¶ 72. The doctrine does not preclude a timely challenge to an agency's authority or a direct attack in the same proceeding in which a board member is appointed. *Id.* ¶ 73. Rather, it is a defense to a collateral challenge brought after the official action has been completed. *Malacina*, 2021 IL App (1st) 191893, ¶ 21.

¶ 10     In this case, the plaintiff raised the illegal composition of the Board for the first time in his motion for reconsideration of the circuit court's May 31, 2017, order affirming the Board's decision, which motion was filed 11 months after the Board rendered its final decision. The plaintiff's reliance upon the circuit court's August 19, 2014, order in *Taylor v. Dart* which found that the Board was illegally constituted to support his conclusion that the *de facto* officer doctrine is inapplicable is misplaced. The Board's illegal composition as found in *Taylor* "remained ripe for a challenge by a party before the Board – *as long as the party raised it at the time of those administrative proceedings*, and not merely afterward, post-final decision." *Malacina*, 2021 IL App (1st) 191893, ¶ 31 (emphasis in original).

¶ 11     As was the case in *Malacina*, the plaintiff's declaratory judgment claim is barred by the *de facto* officer doctrine because his challenge to the Board's composition was made after the Board rendered its final decision. *Id.* ¶ 32; see also *Cruz,* 2019 IL App (1st) 170915, ¶¶ 28–41.

¶ 12     The plaintiff next seeks reversal of the circuit court's May 31, 2017, order affirming the Board's final decision terminating his employment as a Correctional Officer. He argues that the Board's decision is against the manifest weight of the evidence and that termination of his employment was arbitrary, capricious, and unreasonably harsh. A resolution of the arguments requires consideration of the Sheriff's complaint, the evidence presented during the hearing on that complaint, and the Board's findings of fact based on that evidence.

¶ 13     As noted earlier, the Sheriff filed a complaint with the Board, charging the plaintiff with violations of the Rules and Regulations and the General Orders of the CCDOC. The complaint alleged that: on May 4, 2012, the plaintiff used excessive force against an inmate, Jabari Funches, by striking him in the head and pushing him into a wall and doorway; that he failed to document his use of force against Funches in three official reports he completed relating to the incident; that

he falsely documented that Funches had raised his hands before he struck him; that he falsely stated in a January 31, 2014, interview that he did not see other officers kick Funches; and that he made other false statements regarding the incident. The following evidence was presented during the February 4, 2016, Board hearing.

¶ 14   The parties stipulated to a variety of exhibits that were admitted in evidence, including: general orders of the CCDOC; a letter from Richard Ellitch, an investigator in the Cook County Sheriff's Office of Professional Review (OPR) to the plaintiff; the Response to Resistance/Use of Force report completed by the plaintiff; an Incident Report completed by the plaintiff; an Inmate Disciplinary Report completed by the plaintiff; the plaintiff's statement to the OPR; a video containing eight segments of the May 4, 2012, incident involving Funches; documents relating to Correctional Officer Dale Frank's Response to Resistance/Use of Force report; Officer Frank's statement to the OPR; the witness statement of Sergeant Wilfredo Cintron (Sgt. Cintron); Sgt. Cintron's statement to the OPR; OPR's summary of the plaintiff's interview dated January 31, 2014; Response to Resistance/Use of Force report completed by Correctional Officer Gustavo Jimenez; and a Data Collection Report from Lieutenant Adam Thielen.

¶ 15   Investigator Ellitch was the first witness called to testify. He stated that he had been assigned to OPR since 2014, and prior to that assignment, he had been a Correctional Officer. Ellitch testified that he had been trained in the use of force and had investigated hundreds of use-of-force cases during his tenure at OPR. He stated that he was assigned to investigate the May 4, 2012, incident involving Funches and identified several documents that made up Funches' complaint relating to that incident. Ellitch admitted that the complaint submitted by Funches was against Officer Frank and did not mention the plaintiff.

¶ 16    Ellitch was shown the video of the May 4, 2012, incident and identified Funches, the plaintiff, and other CCDOC employees seen in the video. Ellitch testified that the video shows Funches with his arms at his side and the plaintiff striking him in the head or face. According to Ellitch, Funches did not raise his hands toward the plaintiff. He testified that the plaintiff stated in his Response to Resistance/Use of Force report that Funches had taken a combative stance and raised his hands toward him, neither of which actions he observed in the video. Ellitch opined that the plaintiff and other CCDOC employees had used excessive force against Funches.

¶ 17    Ellitch testified that he interviewed the plaintiff on March 24, 2014, at which time the plaintiff told him that Funches had disobeyed his directive to keep his hands down, yelled and uttered an obscenity at him, and that Funches turned and faced him. The plaintiff told him that he felt threatened by Funches. Ellitch again stated that he did not see Funches raise his hands in the video and opined that it would have been unreasonable for the plaintiff to be in fear of a battery. He opined that, even if Funches was not responding to the plaintiff's commands, "that would make him at worse a non-moving resistor." Based on the video, Ellitch stated that, even when he was struck by the plaintiff, Funches never became more than a non-moving resistor. According to Ellitch, the plaintiff should have used a control hold. Ellitch testified that the video shows that there were at least four other correctional officers around Funches when the plaintiff struck him. He concluded that the plaintiff's actions in striking Funches were unreasonable and no blow to the head was warranted. Ellitch was also of the opinion that the plaintiff's actions escalated the situation, noting that once the plaintiff struck Funches a fight broke out between Funches and several other correctional officers.

¶ 18    Ellitch related that the video also depicts the plaintiff pushing Funches into a wall and a doorway as he was being escorted to his cell in handcuffs, facts which were not reported in either

the Incident Report or Inmate Disciplinary Report completed by the plaintiff. Ellitch testified that, when he questioned the plaintiff about pushing Funches, the plaintiff stated he neither pushed nor shoved Funches into a wall or a doorway. The plaintiff told him that Funches was struggling and pulling away as he was being escorted through the doorway. It was Ellitch's testimony that the plaintiff's statement was not consistent with what was depicted on the video.

¶ 19    On cross-examination, Ellitch was questioned about his knowledge of the use of force and the training he received on the subject. He acknowledged that, in his complaint, Funches identified Officer Frank as the primary officer who had used excessive force against him.

¶ 20    Ellitch testified that he interviewed Correctional Officer Jaime Mireles concerning his Response to Resistance/Use of Force report wherein he indicated that Funches was a non-moving resistor, a moving resistor, and a low-level assailant. According to Ellitch, Officer Mireles also stated in his report that Funches was yelling and arguing with the plaintiff and refusing to comply with his orders.

¶ 21    Ellitch was shown a Response to Resistance/Use of Force report completed by Correctional Officer Frank which states that Funches was a moving resistor, a non-moving resistor, and all three levels of an assailant. Ellitch testified that he interviewed Frank on February 6, 2020, at which time Frank stated that he did not remember the incident but stood by his report.

¶ 22    Ellitch was also shown a report completed by Sgt. Cintron in which he stated that he saw Funches take a combative stance toward the plaintiff and raise his hands. According to the report, the plaintiff struck Funches with an open hand. Ellitch testified that he interviewed Cintron in March 2014 at which time Cintron stated that he was familiar with the incident but that his memory was vague.

¶ 23   According to Ellitch, he was unable to interview several other individuals involved in the incident with Funches because they were no longer with the CCDOC. He was shown a Response to Resistance/Use of Force report that had been completed by then Correctional Officer Gustavo Jimenez which identified Funches as a non-moving resistor, a moving resistor, and a low-level assailant. The report states that Jimenez witnessed Funches yell an obscenity at the plaintiff and tell the plaintiff "I don't have to listen to you." The report also states that Jimenez witnessed Funches decline to comply with a verbal order from the plaintiff, take a combative stance, and fail to place his hands behind his back to be handcuffed.

¶ 24   Ellitch was shown the report that was submitted by Lieutenant Thielen which states that Funches took a fighting stance and that the plaintiff struck him with an open hand. In that report, Thielen checked a box stating: "All officers acted in accordance with Department policy." Thielen's report shows that it was reviewed by Superintendent Michael Holmes and Director Gary Hickerson, both of whom agreed with the preliminary findings.

¶ 25   Ellitch testified that he interviewed Funches over the phone while he was a detainee at the CCDOC. He admitted that Funches never mentioned the plaintiff by name and never alleged that he had been pushed into a wall or a doorway.

¶ 26   On redirect examination, Ellitch stated that he did not agree with the statements that some of the officers made in their reports that were not supported by the video of the incident. After being shown the definition of a low-level assailant, which states "This type of assailant is one who places an officer in fear of a battery and includes advancing on the officer in a threatening manner or closing the distance between the assailant and the officer," Ellitch was asked who closed the distance between Funches and the plaintiff. He responded that the plaintiff "was the one who approached detainee Funches."

¶ 27 The next witness called was James Hart who testified via Skype. Hart testified that he is employed by the University of Tennessee, County Technical Assistance Service, and as a jail management consultant. He stated that he has been involved in corrections for over 35 years and was engaged in this case as an expert witness by the Sheriff. Over an objection by the plaintiff, Hart was permitted to testify as an expert, and his CV was admitted in evidence.

¶ 28 Hart testified that prior to the hearing he had been provided with, and reviewed, the Sheriff's orders, statements, reports of the Funches incident, supervisory reviews, and the videos of the incident. Based upon his review of the exhibits, he concluded that the plaintiff used excessive force on May 4, 2012, when he struck Funches. According to Hart, Funches did not pose any potential risk when he was struck. He stated that the plaintiff closed the distance between himself and Funches and positioned himself face to face with Funches, escalating the situation. Hart testified that Funches had been turned around by one of the other officers to face the plaintiff, and it was at that point that the plaintiff struck Funches on the side of his face with his right hand while Funches' hands were down at his side. It was Hart's opinion that Funches was a high-level cooperative subject at the time that he was struck by the plaintiff. Funches was not a moving resister because he was complying with the movements of the correctional officers, standing, and not moving away from the officers. Hart also opined that Funches did not fall into any of the assailant categories because he was standing where he had been placed and did not initiate any aggressive actions toward the officers.

¶ 29 On cross-examination, Hart admitted that he had never worked for the CCDOC except about 15 years earlier when, as part of a team, he conducted an audit of the CCDOC. He stated that he had been involved in one use-of-force situation as an officer and two as a supervisor when he was employed with the Hamilton County Sheriff in Tennessee. According to Hart, the use of

force by an officer is reviewed based upon a totality of the circumstances, judged from the perspective of the officer, and taking into account the level of the threat, the number of officers at the scene, the size of the inmate, and the location of the incident. He was of the belief that the location of this incident was "low-risk unlocked" where the inmates were free to move around on their own. Hart stated that he would be surprised to know that the inmate mix in the area consisted of both inmates being held for minor offenses and those being held for egregious violent offenses.

¶ 30    Hart testified that Funches was "high-level cooperative," following the correctional officers' directions when they had their hands on him, and he was not resistant. He was unaware of what verbal commands had been given to Funches or whether he had been ordered to turn around to be "cuffed up." Hart also admitted that he had no knowledge of whether Funches had a confrontation with another inmate prior to the incident. He maintained that the plaintiff should have taken steps to deescalate the situation.

¶ 31    On redirect examination, Hart stated that he had no information that Funches had "balled his fists" at the plaintiff.

¶ 32    On recross-examination, Hart testified that manipulation of Funches' limbs would have been a possible alternative to the use of force.

¶ 33    Sgt. Cintron was the next witness to testify when the hearing continued on February 5, 2016. He related that he had been with the CCDOC for 20 years, 16 to 17 years of which were as either the "CO" or a sergeant at the RCDC. He had been terminated by the Board for false statements and omitting information from his reports of the May 4, 2012, incident.

¶ 34    Testifying as an adverse witness, Cintron stated that he was on duty on May 4, 2012, but had no independent recollection of the incident that occurred on that date. After being shown the

Data Collection Report that he had signed and the statement he had given to the OPR concerning the Funches incident, he testified as follows.

¶ 35    According to Cintron, he had been sitting at his desk in an area called the "pit" prior to the incident and would not have been able to see "Bullpen A" while he was seated. If he stood up, he could see individuals from shoulder high. Cintron was shown the video of the incident with Funches, and he identified himself as the individual wearing a white shirt. He was unable to tell whether, when he walked into sight of the cameras, he was seated or standing beforehand. Cintron explained that, if he was standing, his line of sight was about shoulder high. He acknowledged that he wrote in his report that Funches was in a combative stance with the plaintiff. However when asked to explain what it was about Funches that was combative, he stated that Funches was yelling and had turned toward the plaintiff. He was also asked about the statement in his report that Funches raised his hands at the plaintiff. Cintron admitted that Funches did not raise his hands above his shoulder. He was able to recall that he came running after the plaintiff struck Funches.

¶ 36    Cintron testified that he was with the other officers when they moved the handcuffed Funches to another area. According to Cintron, he did not see the plaintiff push Funches into a wall.

¶ 37    Cintron was unable to recall whether, after the incident, all of the officers involved prepared their reports together in the same room. Nor could he remember if he was in the same room with the officers when their reports were prepared. He did recall gathering the officers together after the incident to prepare their paperwork.

¶ 38    On cross-examination, Cintron testified that his report would have been prepared at the time of the incident, and he would have remembered at that time whether he was standing or sitting before the incident. He admitted that he wrote in his report that Funches took a combative stance.

¶ 39    On redirect examination, Cintron stated that, from his view of the video, he did not see the plaintiff push Funches into a wall. He admitted, however, that pushing a detainee into a wall would be a use of force.

¶ 40    On re-cross examination, Cintron testified that stabilizing a detainee would not be considered a use of force.

¶ 41    In his case-in-chief, the plaintiff called James Klauba, a Chicago police officer, as an expert witness. Klauba testified that he had been a member of the Chicago Police Department (CPD) for 16 years and, for the last 10 years, was assigned to the Education and Training Division as a use-of-force and control instructor. In addition, he was the owner of the Blueline Training Corp, a company that teaches law enforcement certification and also works as an instructor on the use of force, handcuffing, and baton control for Armament Systems and Procedures. Klauba stated that he had worked as a Correctional Officer for the CCDOC from 1994 to 1999. His CV, resume, and a use-of-force model entitled "Blueline Training Force Grid" which he authored were all admitted in evidence.

¶ 42    Klauba testified that he had reviewed the reports relating to the plaintiff's use of force on Funches and the videos of the incident. He opined that the plaintiff's use of force was reasonable. He stated that Funches' actions were "aggressively offensive." Relying on the plaintiff's Response to Resistance/Use of Force report which states that when issued a command Funches said "fuck you, I don't have to listen to you," the reports' description of Funches' body cues and stance, and the passage stating the Funches' hands started to come up, Klauba classified Funches as aggressively offensive without weapons. Klauba admitted that he was unable to determine from the video whether Funches' hands came up. However, he noted that the other officers' reports of the incident supported the plaintiff's statement that Funches' hands started to come up. It was

Klauba's opinion that the plaintiff could have used even a higher method of control rather than an open-hand strike.

¶ 43     On the question of whether the plaintiff pushed Funches into a wall or a doorway, Klauba testified that his review of the video showed three men going through a doorway at the same time, and although some contact was made, it did not appear that Funches was intentionally pushed by any of the officers.

¶ 44     On cross-examination, Klauba stated that he had testified as an expert witness on three previous occasions, each time on behalf of officers, never on behalf of a correctional institution. He admitted that he never interviewed the plaintiff and that his opinions were based solely on the documentation he had been provided.

¶ 45     The plaintiff was the next and final individual to testify. He stated that he had been employed with the CCDOC for 7 1/2 years and had never been the subject of any prior disciplinary proceeding that he could recall. He testified that he was aware of the orders on response to resistance and the use of force and related the training he had received on that subject. The plaintiff identified the Response to Resistance/Use of Force report that he completed relating to the incident involving Funches and testified to its contents.

¶ 46     The plaintiff testified that he administered an open-handed strike after Funches made a slightly evasive movement of his arm. According to the plaintiff, he was trying to get Funches to cooperate and turn in the opposite direction so that he could be handcuffed and isolated from the other detainees in the bullpen. According to the plaintiff, Funches did not comply with his commands and moved his hands up. The plaintiff stated that he administered the open-handed strike because he was in fear for his own safety. The plaintiff also denied pushing Funches into a

wall or doorway. He stated that Funches was not cooperating as he and the other officers were escorting him from the scene.

¶ 47    On cross-examination, the plaintiff testified that he engaged with Funches when he was called to a disagreement between Funches and another detainee in a bathroom. He stated that, when he ordered Funches and the other detainees to go to Bullpen 5, Funches said, "fuck you, I don't want to walk to Bullpen 5." At that time, he was about a foot from Funches. The plaintiff testified that he closed the distance between himself and Funches in an effort to defuse the situation. He admitted that he was waiving his finger in Funches' face, an action that was not part of his training. The plaintiff stated that Funches turned toward him when one of the other officers put his hand on him. According to the plaintiff, Funches "turns not the way that you – he was supposed to turn. He was supposed to turn around to be handcuffed. He turns forward." The plaintiff testified that Funches took a combative stance and his hands started to come up. When shown the video, the plaintiff said, "if you look right here, you see his elbow coming up, you see the arm." He was then asked, "He's pulling his pants up right here, correct?" The plaintiff responded, "I don't know." He was then asked, "Is it your testimony that when a detainee pulls up his shorts that was the movement that caused you to strike him in the face, are you?" The plaintiff answered, "No." In his Response to Resistance/Use of Force report and in his statement to the OPR, the plaintiff wrote that Funches raised his hand toward him. He testified that "I seen hands coming up, or raising up."

¶ 48    The plaintiff testified that, after Funches was handcuffed, he and another officer escorted him from the area and through a doorway. He denied walking Funches into a wall.

¶ 49    On re-direct examination, the plaintiff testified that, in preparing his reports of the incident, he did not use the video. He stated that the reports were prepared based upon his best recollection

of the events. He again confirmed his earlier testimony that Funches took a combative stance and that his hands came up, and that he was in fear of his safety when he struck Funches.

¶ 50     The video of the incident which was admitted in evidence before the Board was not part of the original record filed by the plaintiff. However, we granted the Sheriff's motion to supplement the record with the video and have considered it in our analysis. The video of the incident does not include audio. In the video, Funches can be seen exiting what has been identified as an inmate restroom. He is carrying what appears to be a towel or article of clothing draped over his right forearm and a white object, possibly a piece of rolled up paper, in his left hand. As he approaches two correctional officers, one of the officers places a hand on Funches' right arm, turning him around. A third officer approaches Funches from the front and appears to point a finger at Funches' face. At that point, Funches is still holding the white object in his left hand and his left arm is at his side. A correctional officer can be seen standing to Funches' right. Immediately after pointing his finger at Funches face, the officer is seen striking Funches in the head. As he is hit, the correctional officer standing to Funches' left knocks the white object out of his left hand. Prior to being hit, Funches' left arm never left his side. The video shows that, upon being struck, Funches' body immediately turns to the right and leans back; his right arm is at his side. After Funches is struck, the video shows a number of correctional officers rushing to the scene and wrestling him to the floor. While he is on the floor, the video shows Funches being punched and kicked by a number of correctional officers. After Funches is handcuffed and raised to his feet, one of the officers can be seen putting his hand on Funches' head and pushing his face into the cycline fencing that formed the front of cell B. The plaintiff's own testimony identified him as the officer that pointed his finger at Funches face and struck Funches in the head.

¶ 51     In its written decision, the Board found "by a preponderance of the evidence through the testimony of the witnesses; the video tape recording of the May 4, 2012, incident ***; and the supporting evidence that the *** [plaintiff] and others used excessive force, were less than credible in their testimony and inaccurate in their written reporting of the event ***." According to the Board's decision, "[t]he video *** shows that the inmate Funches was hit in the head by the *** [plaintiff] at least one time, taken to the ground and then punched and kicked by other officers." The Board found that because Funches was "at most a non-moving resistor and then became a moving resistor once the initial blow was delivered by the *** [plaintiff], [he] did not fit the category of becoming an assailant." The Board found "a lack of evidence that the detainee [Funches] became an assailant by making an aggressive move against the *** [plaintiff] , balling his fists, raising his arms or otherwise taking a combative position against the *** [plaintiff]." The Board found that the testimony of the plaintiff and his expert witness that Funches became an assailant is "inconsistent with the video." It was also the Board's determination that the plaintiff and others did not fully report the events regarding the use of force applied against Funches.

¶ 52     The Board concluded, "[b]ased on the evidence presented and after assessing the credibility of the witnesses and the weight to be given the evidence in the record," that the plaintiff violated certain specified Sheriff's Orders, General Orders, and Rules of The Cook County Sheriff's Merit Board. The Board ordered the plaintiff separated from employment with the Cook County Sheriff's Office.

¶ 53     The charges against the plaintiff were filed with the Board pursuant to section 3-7011 of the Counties Code (Code) (55 ILCS 5/3-7011 (West 2014)). Section 3-102 of the Administrative Review Law provides that the statute "shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such

agency, by express reference, adopts the provisions of \*\*\* the Administrative Review Act." 735 ILCS 5/3-102 (West 2022). Section 3-7012 of the Code provides that the Administrative Review Law applies to and governs proceedings for review of the Board. 55 ILCS 5/3-7012 (West 2014).

¶ 54 Under the Administrative Review Law, our review extends to all questions of fact and law presented by the entire record. 735 ILCS 5/3-110 (West 2022). In appeals from judgments of the circuit court on administrative review, we review the decision of the administrative agency, not the determination of the circuit court. *Frances House, Inc. v. Department of Public Health*, 2015 IL App (1st) 140750, ¶ 22.

¶ 55 The standard of review which we apply to an administrative decision depends on whether the question presented is a question of fact, a question of law, or a mixed question of fact and law. *AMF Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204–05 (1998). Rulings on questions of fact will be disturbed on review only if against the manifest weight of the evidence. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471–72 (2005). Questions of law are reviewed *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). Mixed questions of fact and law are reviewed under a clearly erroneous standard. *AMF Messenger Service, Inc.*, 198 Ill. 2d at 391–95; *City of Belvidere*, 181 Ill. 2d at 205.

¶ 56 The first step in our analysis is to determine whether the Board's findings of fact are contrary to the manifest weight of the evidence. An administrative agency's findings and conclusions of fact are considered *prima facie* true and correct. 735 ILCS 5/3-110 (West 2022). The Board's factual determinations are against the manifest weight of the evidence only where an opposite conclusion is clearly apparent. *Beggs v. Board of Education of Murphysboro Community School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 57    In this case, the plaintiff makes several arguments in support of his contention that the Board's decision is against the manifest weight of the evidence. According to the plaintiff, (1) the Board relied on evidence outside of the record, (2) the Board "improperly relied upon credibility determinations," (3) the Board's factual determinations are unsupported by credible evidence, and (4) the Board's finding that he used excessive force is clearly erroneous. We address each assertion in turn.

¶ 58    The plaintiff argues that "the Board relied on evidence outside of what the Sheriff submitted to it in concluding that *** [he] failed to report that 'the detainee [Funches] being punched and kicked while on the ground as evident from the video.' " According to the plaintiff, "the Sheriff never presented evidence on this point." We disagree. The video of the incident which was admitted in evidence by stipulation of the parties showed Funches being punched and kicked, a fact that is not contained in any of the reports submitted by the plaintiff.

¶ 59    Next, the plaintiff argues that the Board "improperly relied upon credibility determinations" in arriving at its decision. The argument is based upon the fact that Brian Riordan, a former member of the Board, acted as the hearing officer but did not participate in the decision. The plaintiff asserts that it was board member Kim Widup, who was not present at the hearing, who prepared the Board's written decision containing credibility findings unfavorable to him and his defense. According to the plaintiff, the Board's decision hinges on the hearing officer's credibility findings with respect to his perceptions of Funches' actions, what he documented in his reports, the statement that he gave to the OPR, and the credibility findings relating to the content of the reports of the other officers involved in the incident.

¶ 60    The plaintiff is correct in his assertion that a hearing officer's findings, where demeanor is important, is an element to be considered in determining whether evidence supports an agency's

decision. *Serio v. Police Board of the City of Chicago*, 275 Ill. App. 3d 259, 267 (1995). However, in this case, the Board's determination that the plaintiff and other officers involved in the incident were "less than credible in their testimony and inaccurate in their reporting of the event" is not dependent upon witness demeanor; rather, it is based upon a video of the incident that was admitted in evidence. The plaintiff testified that, prior to striking him, Funches moved his hands up and took a combative stance. In their reports, the plaintiff, Jimenez, and Cintron stated that Funches had taken a combative stance and raised his hands. However, the video shows Funches with his arm at his side, and contrary to the testimony of the plaintiff and the content of his reports and the reports of other officers, the video of the incident does not show Funches raising his hands or taking a combative stance before being struck by the plaintiff. The Board's credibility finding is supported by the video, not by the credibility assessment of a hearing officer.

¶ 61    Next the plaintiff argues that the Board's factual findings are not supported by the evidence. Specifically, he takes issue with the Board's finding that Funches was "in the control of two correctional officers who were by his side." He notes that the officers who were allegedly holding Funches were not called to testify. However, as the Sheriff correctly argues, the plaintiff's testimony that Funches was walking away from the officers as they were trying to handcuff him is inconsistent with the video which shows that before he was struck there was one correctional officer standing to Funches' right and another officer was standing to his left. The video fails to show Funches attempting to walk away from the officers before he was struck by the plaintiff. Further, as noted earlier, the video fails to reflect that Funches raised his hand or took a combative stance toward the plaintiff before he was struck. Rather, it shows that Funches was standing erect between two correctional officers with his left arm at his side when the plaintiff approached, pointed his finger at Funches' face, and immediately struck Funches in the head.

¶ 62    Finally, the plaintiff argues that the Board's finding that he used excessive force is clearly erroneous. According to the plaintiff, the Board deferred to the opinions of the Sheriff's expert witness regarding the use of force. However, the plaintiff cited no authority in support of the argument other than reciting the holding in *Graham v. Connor*, 490 U.S. 386, 396 (1989), that the use of force must be judged from the perspective of a reasonable officer at the scene. He notes his objection to Hart's qualification as an expert but cites no authority supporting the proposition that Hart should not have been permitted to testify as an expert witness. The plaintiff concludes that, "[b]ecause the Board elevates Hart's testimony and its own hindsight review over the textual guidelines of the Sheriffs Order, the controlling case law, and the testimonial perspective of reasonable on scene officers, it [the Board's finding that he used excessive force] is clearly erroneous." Having failed to cite authority supporting the proposition that the Board's findings on excessive force were clearly erroneous, the plaintiff has forfeited the argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Waiver aside, we find no merit in the argument.

¶ 63    A finding by an administrative agency is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *AMF Messenger Service, Inc.*, 198 Ill. 2d at 393. The testimony of the plaintiff and the reports of the plaintiff and the other correctional officers involved stating that prior to being struck Funches took a combative stance and raised his arms toward the plaintiff are contradicted by the video of the incident. As noted earlier, the video shows that Funches was standing erect with his left arm at his side when the plaintiff approached, pointed his finger at Funches' face, and immediately struck Funches in the head. The video fails to show Funches in a combative stance or raising his arms toward the plaintiff. The video supports the Board's finding that the plaintiff was "less than credible" in his

testimony, that he and the other officers involved were inaccurate in their written reports, and that the testimony of the plaintiff and his use of force expert are inconsistent with the video.

¶ 64    For the reasons stated, we conclude that the Board's findings of fact are not against the manifest weight of the evidence nor are they clearly erroneous.

¶ 65    Finally, the plaintiff argues that his termination is arbitrary, capricious, and unreasonably harsh. He notes that he had never been disciplined before. He also notes that the Board did not render a factual finding on the charge that he pushed Funches into a wall. The plaintiff contends that, "in light of the grievous evidentiary issues in this case, there is no support for a finding of cause [for his discharge]." Again, we disagree.

¶ 66    A Sheriff's correctional officer may not be discharged except for cause. 55 ILCS 5/3-7012 (West 2014). Having found that the Board's findings of fact are not against the manifest weight of the evidence, we now address the issue of whether those factual findings provide sufficient basis for concluding that cause for terminating the plaintiff's employment exists. *Walker v. Dart*, 2015 IL App (1st) 140087 ¶ 39. Cause is defined as some substantial shortcoming that renders the employee's continued employment in some way detrimental to the discipline and efficiency of the service and something that the law and a sound public would recognize as good cause for discharge. *Ehlers v. Jackson County Sheriff's Merit Commission*, 183 Ill. 2d 83, 89 (1998); *Walsh v. Board of Fire and Police Commissioners of the Village of Orland Park*, 96 Ill. 2d 101, 105 (1983).

¶ 67    In determining whether sufficient cause exists to warrant the plaintiff's discharge, we are not at liberty to substitute our judgment of what we consider to be a more fitting sanction. Rather, our review is confined to determining whether the Board's sanction is so unreasonable or arbitrary as to be unrelated to the requirements of service. *Walsh*, 96 Ill. 2d at 105; *Merrifield v. Illinois*

*State Police Merit Board*, 294 Ill. App. 3d 520, 529–30 (1998). We accord substantial deference to the Board's decision in the matter. *Walsh*, 96 Ill. 2d at 105. The Board was in the best position to determine the effect of the plaintiff's actions on the CCDOC and the office of the Sheriff. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009).

¶ 68    The Board found that the plaintiff used excessive force against an inmate, did not fully report the events of the incident regarding the use of force, and was inaccurate in his written reports. Based on those findings, the Board concluded that the plaintiff had violated three specific General Orders of the CCDOC, two specific Sheriff's Orders, and one of its own rules.

¶ 69    The violation of a single rule may constitute a sufficient basis for discharge. *Cruz v. Cook County Sheriff's Merit Board*, 394 Ill. App. 3d 337, 342 (2009). Sheriff's Order 11.2.1.0, Section X, provides that "[t]he use of excessive force is prohibited." Subsection A of that same section provides in sub-subsections (4), (6), and (7) that "[t]he following acts are prohibited; use of force as a response to verbal insults or subject threats where there is no immediate threat to safety of the institution, subjects, or staff; striking, hitting, or punching a restrained or handcuffed and non-combative subject; and use of force against a subject after the subject has ceased to offer resistance and is under control." The Board specifically found that the plaintiff had violated that Sheriff's Order. General Order of the CCDOC 4.1, III, A, 18 provides that "Serious Misconduct" includes "[m]aking a false official report, either oral or written." The Board found that the plaintiff also violated that General Order.

¶ 70    A clear public policy exists prohibiting the use of excessive force against an inmate and justifies the discharge of a correctional officer engaging in such activities. *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME), AFL-CIO*, 197 Ill. App. 3d 503, 514 (1990). The fact that the plaintiff had never been

disciplined before does not preclude a finding that sufficient cause exists for his discharge given the nature of the charges involved. *Bultas v. Board of Police & Fire Commissioners o the City of Berwyn*, 171 Ill. App. 3d 189, 196–97 (1988).

¶ 71 Having found that the Board's findings that the plaintiff used excessive force against an inmate and falsified official reports concerning the incident are not against the manifest weight of the evidence, we conclude that cause exists for the plaintiff's discharge and the Board's decision to terminate his employment as a correctional officer with the office of the Sheriff of Cook County was not arbitrary, capricious, or unreasonably harsh.

¶ 72 Based upon the foregoing analysis, we affirm both the circuit court's order of May 31, 2017, which affirmed the Board's July 29, 2016, decision terminating the plaintiff's employment and the circuit court's order of June 23, 2022, which dismissed the plaintiff's Second Amended Complaint.

¶ 73 Affirmed.

***Mireles v. Dart*, 2023 IL App (1st) 221090**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Chancery Division, No. 2016-CH-11288; the Hon. Neil Cohen,udge, presiding. |
| **Attorneys for Appellant:** | Cass T. Casper, Esq.<br>DISPARTI LAW GROUP, P.A.<br>121 West Wacker Drive, Suite 2300<br>Chicago, Illinois 60601<br>P: (312) 506-5511 ext. 331 |
| **Attorneys for Appellee:** | William Andrichik<br>Septoe & Johnson, LLP<br>161 N. Clark Street, Suite 4700<br>Chicago, Illinois 60601<br>P: (312) 577-1273 |