2024 IL App (1st) 230283-U
Order filed May 2, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0283

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANTHONY J. SQUEO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CH 12385 |
| | ) | |
| THOMAS J. DART and the COOK COUNTY | ) | |
| SHERIFF'S MERIT BOARD, | ) | Honorable |
| | ) | Neil Cohen, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The decision of the Cook County Sheriff's Merit Board (Board) to suspend a correctional officer from duty for 45 days is affirmed where the Board's findings were not against the manifest weight of the evidence or clearly erroneous and sufficient cause existed for the suspension.

¶ 2    Plaintiff Anthony Squeo appeals from an order of the circuit court affirming the decision of the Cook County Sheriff's Merit Board (Board) suspending him from employment as a correctional officer for 45 days without pay because he failed to state in a written "use of force" report that his hand was on a detainee's neck during an interaction with the detainee. On appeal,

Squeo contends that the Board's decision was against the manifest weight of the evidence and clearly erroneous and that his suspension was not for just and sufficient cause. For the reasons that follow, we affirm.

¶ 3    On July 25, 2017, the Sheriff of Cook County (Sheriff) filed a complaint with the Board seeking to suspend Squeo for 180 days. On January 25, 2018, the Sheriff filed an amended complaint seeking the same sanction. The Sheriff alleged, *inter alia*, that Squeo, who was working at the Cook County Department of Corrections (CCDOC) Cermak Facility (Cermak), had (1) used excessive force and inappropriate tactics against a detainee, Chmoundy Belton, when he grabbed and held him by the throat for approximately five seconds on April 26, 2014; (2) failed to accurately report this use of force to his supervisor in his written incident report or in his written use of force report; and (3) failed to conduct himself in a professional manner and violated the rules, regulations, and general orders of the Sheriff's office and the CCDOC.

¶ 4    The Board conducted an evidentiary hearing on April 19, 2018. The following evidence was adduced at the hearing.

¶ 5    Brian Nyberg, an investigator with the Sheriff's Office of Professional Review (OPR), testified that when he was assigned to Squeo's case, he reviewed all of the documents in the case file, including an incident report and a use of force report, both written by Squeo, and interviewed Belton, Squeo, and other officers who were present at the time of the incident. Squeo's incident report did not include a statement that his hands were on Belton's neck or throat. Similarly, Squeo's use of force report did not state that he had his hand wrapped around Belton's neck. In the use of force report, Squeo wrote that he grabbed both of Belton's arms and that he and another officer took Belton to the floor. He did not write that Belton lunged at him.

¶ 6 During his investigation, Nyberg also viewed a video of the incident that was recorded by the bodycam on Squeo's left shoulder. The video was published at the hearing.[1] According to Nyberg, for part of the video, it was not possible to see what was happening, due to the camera movement. Then, the video depicted Squeo's gloved hand on Belton's neck. Nyberg did not see Squeo place his hand on Belton's shoulder or arms in the video. Based on the video, he believed Squeo used excessive force on Belton.

¶ 7 At the conclusion of his investigation, Nyberg determined that Squeo violated several Sheriff's orders regarding rules of conduct and an article of the Board's rules and regulations. He also determined that Squeo did not, immediately after the incident, notify his supervisor that his hand was on Belton's neck. Nyberg's written report, which was admitted into evidence, detailed his findings.

¶ 8 On cross-examination, Nyberg agreed that in one of Squeo's reports, Squeo wrote "something like, 'And then [Belton] turned to face me with both fists clenched *** in a fighting stance.' " He also agreed that Belton made no complaints during his interview about the way he was handled by Squeo. Nyberg was not aware of Belton having received any injury. Nyberg acknowledged that, in a memorandum he sent to OPR's assistant director, he wrote as follows:

> "In his interview Sgt. Squeo did not deny that he held detainee Belton by the throat. He did however deny that he intentionally grabbed detainee Belton's throat; he stated he reached to push detainee Belton's chest but detainee Belton kept pushing toward him causing his hand to move upward. The actual moment when Sgt. Squeo's hand went to

---

[1] The video is not included in the record on appeal.

detainee Belton's neck was not captured on camera so his statement cannot be proved or disproven."

¶ 9 On redirect examination, Nyberg agreed that because the camera was "moving around" prior to capturing video of Squeo's hand on Belton's neck, he could not, from the video, confirm nor deny Squeo's account that Belton lunged or moved in such a way that Squeo's hand wound up around his neck. Nyberg reiterated that Squeo did not write in his incident report or use of force report that his hand was on Belton's neck. On recross, Nyberg agreed that there was no particular rule against having a hand on a detainee's throat. He also agreed that Squeo had not yet watched the video when he wrote the statement "that was the subject of the charges."

¶ 10 The Sherriff introduced several documents into evidence, including Squeo's use of force report and incident report. Relevant here, Squeo hand-wrote the following description of the incident in the "narrative" section of the use of force form:

"On the above date and approximate time while conducting a tier search on 2 South of Cermak when R/O Squeo #9659 arrived to cell # 2107, while removing the 6 detainees assigned to the cell to be placed on the wall to be searched, detainee Belton CHMOUND [*sic*] #2013-0508150 stated "I'm gonna turn up" and then turned to face R/O with both fists clenched up in a fighting stance. R/O immediately grabbed both the detainee's arms with the assistance of Ofc. Ortiz #10120. Detainee was then brought to the floor where Ofc. Ortiz and R/O performed emergency handcuffing. Sgt. Crawford present on tier. Detainee was seen by Nurse Sanders on the tier and cleared. No further incident."

Squeo included the same narrative, typed, in the "incident" portion of his incident report.

¶ 11    Squeo testified that, on the day of the incident, he was assigned to Cermak as part of an emergency response team for high security detainees. That day, security found a 14-inch shank in a detainee's cell. As such, the six- or seven-member team conducted a search of the rest of the tier to ensure there were no other weapons or contraband in the area. Belton's cell was the last one to be searched. Squeo turned on his bodycam and ordered Belton and the cell's other five occupants to step out of the cell and face the wall so they could be searched. Belton expressed verbal agitation and made body movements that were "a little aggressive," but complied. Squeo testified, "And upon coming out, Mr. Belton swung at me, and we proceeded to take him down to the ground to secure him in handcuffs and gain compliance."

¶ 12    When asked for clarification of the sequence of events, Squeo stated that, after he ordered the detainees to place their hands on the wall, Belton initially turned towards the wall. However, Belton then turned toward Squeo, so Squeo placed his hand on the back of his arm or his "back area" to keep him facing the wall. Belton continued turning toward Squeo and swung at him. In response, Squeo placed his hand on Belton's chest. Belton continued to approach as Squeo was attempting to secure him and push him back. Squeo's intent at the time was to gain Belton's compliance and he was not concentrating on where his hands were at any particular second.

¶ 13    Squeo stated that, when he wrote his "incident/use of force report," he had not yet seen the video from his bodycam and was not attempting to deceive anyone. If he had remembered at that time that his hand "went up to [Belton's] neck area when he was moving forward," he would have included that information in his report, as he was supposed to report the incident "to the best of [his] memory." He knew at the time that his bodycam video of the incident would be reviewed at some point. Finally, when asked whether the video adequately depicted Belton's resistance, Squeo

stated, "Well, you can very glimpse see [Belton's] arm go in front of the video swinging at me, but because it becomes shaky and such a fast movement, it's hard to see."

¶ 14    On cross-examination, Squeo agreed that he was familiar with the Sheriff's rules, regulations, and general orders, including those concerning the use of force. He also agreed, with regard to the video, that "after the camera steadies itself, the first thing that we see is your right hand in a black glove up against the detainee's neck." Squeo acknowledged that, although he had his hand "near" Belton's neck, he did not "put that" in either his incident report or use of force report regarding the incident. He also acknowledged that he did not write in either report that Belton swung at him, explaining that he did not remember that circumstance at the time he was writing the reports. He agreed that, if he had recalled having his hand on Belton's neck, he would have reported that to his supervisor "because reporting of use of force is mandated by the rules and regulations and General Orders."

¶ 15    Sergeant Brian Crawford testified that he was part of the team searching cells at Cermak on the day in question. As he and other officers were removing detainees from the last cell and placing them along the wall to be frisked, he heard the last detainee say, "I'm gonna turn up." He explained that when a detainee uses the words "turn up," it usually "means that he's going to act out in some physical way." Crawford heard a scuffle and, when he looked over from the detainee he was searching, he saw Squeo and another officer "with [Belton] by the arms taking him down to the ground." Crawford did not observe any inappropriate behavior by either officer.

¶ 16    On cross-examination, Crawford agreed that, during the incident, his attention was split between the detainees. He did not see Squeo put his hand on Belton's neck. Since that time, he had

viewed the video. In the video, he saw Squeo place his hand on the upper front part of Belton's neck.

¶ 17    Officer Kirk Ortiz, another member of the team searching detainee cells, testified that when he arrived at Belton's cell, Belton was pacing and stating he would "turn up" if the officers entered the cell. The team opened the cell door and removed the detainees. When Belton exited, he was "already aggressive." As the officers were attempting to place him against the wall for a pat-down, he "got aggressive" toward Squeo. Specifically, "His hands were already clenched, they were already clenching in a fist as he was pacing back and forth and exiting the cell, he pushed towards Sergeant Squeo in an aggressive manner where we reacted to restrain him and put him under compliance and do an emergency takedown."

¶ 18    It had appeared to Ortiz that Belton was "getting ready to strike" Squeo. Ortiz clarified that he and Squeo were the two officers who were depicted "grappling with" Belton in the video. Ortiz did not see Squeo doing anything inappropriate, aggressive, or excessive when handling the situation.

¶ 19    On August 30, 2018, the Board issued its decision, concluding that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents." The Board found that when Squeo was attempting to create distance between himself and Belton, his hand "did go up to the detainee's neck." The Board found that Squeo's hand was on Belton's neck for four to six seconds, but the contact was not a choke hold and Squeo did not use deadly force. The Board determined that Squeo should have written in his use of force report that his hand was on Belton's neck. Noting that Squeo admitted after watching the video that his hand was on Belton's neck, the Board stated he "should

have documented that in his report" as "[i]t is an important item [Squeo] is trained to note in completing his report." The Board suspended Squeo for 45 days.

¶ 20    Thereafter, Squeo sought administrative review of the Board's decision in the circuit court. The circuit court affirmed the Board's decision. Squeo filed a timely notice of appeal.

¶ 21    On appeal, Squeo contends that the Board's decision was against the manifest weight of the evidence and clearly erroneous and that his suspension was not for just and sufficient cause.

¶ 22    In administrative appeals, we review the decision of the administrative agency and not that of the circuit court. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 54. The appropriate standard of review depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Id.* We will disturb an agency's rulings on questions of fact only if they are against the manifest weight of the evidence. *Id.* Factual determinations are against the manifest weight of the evidence where an opposite conclusion is clearly apparent. *Id.* ¶ 56. Questions of law are reviewed *de novo*. *Id.* ¶ 55. We review mixed questions of fact and law under a clearly erroneous standard. *Id.* An agency's finding "is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* ¶ 63.

¶ 23    Squeo first argues that the Board's findings of fact that he violated CCDOC General Order 24.9.1.0, "Reporting Incidents," were against the manifest weight of the evidence and its decision was clearly erroneous. He acknowledges that he did not write in his use of force report that his hand was on Belton's neck. However, he argues that the Sheriff failed to prove that this failure to report was willful or that he was even required to report the placement of his hand on Belton's neck. In support of this argument, he asserts that (1) the use of force report form did not indicate that contact with a detainee's neck was to be included, (2) the Sheriff's policies do not specify that

contact with a detainee's neck must be reported, (3) no evidence was presented as to Squeo's training regarding filling out use of force reports, (4) the Sheriff's policies specified that "the use of a firm grip hold which does not result in an injury or allegation of an injury" does not require documentation, (5) "it is obvious from Squeo's testimony he thought he was applying a firm grip or restraint [on] the detainee," and (6) as a matter of common sense, Squeo merely could not recall everything that happened as he wrote the report and was not trying to deceive anyone by omission.

¶ 24     The first step in our analysis is to review the Board's factual findings. An agency's findings and conclusions of fact are considered *prima facie* true and correct. 735 ILCS 5/3-110 (West 2022). As noted above, an agency's factual determinations will be found to be against the manifest weight of the evidence only where an opposite conclusion is clearly apparent. *Mireles*, 2023 IL App (1st) 221090, ¶ 56.

¶ 25     Here, the Board made factual findings that Squeo's hand was on Belton's neck for four to six seconds and that he did not report this contact in his written use of force report. Squeo does not contest these two factual findings, which are supported by the testimony and exhibits presented at the Board hearing. Nyberg and Squeo both testified that the video depicted Squeo's hand on Belton's neck and that this contact was not included in Squeo's reports. The incident report and the use of force report, which were introduced into evidence, do not include the information that Squeo's hand was on Belton's neck. Given the evidence presented at the hearing, we cannot find that the Board's factual findings are against the manifest weight of the evidence.

¶ 26     Next, we must review the Board's conclusion that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents." When the Board determines the legal effect of a given set of facts, it is a mixed question of law and fact and we review that decision for clear error. *Cruz v. Dart*,

2019 IL App (1st) 170915, ¶ 46. As noted above, we may conclude that a finding is clearly erroneous only if we are "left with a definite and firm conviction that a mistake has been committed." *Mireles*, 2023 IL App (1st) 221090, ¶ 63.

¶ 27 CCDOC General Order 24.9.1.0 provides that "Response to resistance/use of force incidents by staff shall be reported in accordance with the current Cook County Sheriff's Office (CCSO) Response to Resistance/Use of Force Policy," and that "CCDOC staff shall completely and accurately document any incident or situation that he or she observes or that is reported to him/her." CCDOC General Order 24.9.1.0, VII, A, 2; B, 2. The General Order further provides that it is applicable to all employees of the CCDOC, that it "is for strict compliance," and that supervisors will "ensure the provisions as outlined are strictly adhered to." CCDOC General Order 24.9.1.0, VIII.

¶ 28 The policy referenced in the General Order appears in Cook County Sheriff's Order 11.2.2.0, which is titled "Response to Resistance/Use of Force Duties, Notifications and Reporting Procedures." This Sheriff's Order requires that "Every response to resistance/use of force greater than social control, officer presence or verbal control must be reported as outlined in this directive." Sheriff's Order 11.2.2.0, II. It further requires that officers who use force must submit a Response to Resistance/Use of Force form. Sheriff's Order 11.2.2.0, V, B, 4. Although the Sheriff's Order sets out several exceptions to the reporting requirement, including an exception for "the use of a firm grip hold which does not result in an injury or allegation of an injury," it does not specify or give examples of physical contact that must be reported. Sheriff's Order 11.2.2.0, V, B, 4, b. The Sheriff's Order is designated as a "High-Priority Order" and directs that it applies

to all Cook County Sheriff's Office officers "and must be strictly observed." Sheriff's Order 11.2.2.0, VIII, A; D.

¶ 29    The Board found that Squeo should have written in his use of force report that his hand was on Belton's neck and that contact between Squeo's hand and Belton's neck was "an important item [Squeo] is trained to note in completing his report." Squeo's own testimony at the hearing supports the Board's conclusion. At the hearing before the Board, Squeo agreed that, if he had recalled having his hand on Belton's neck, he would have reported that circumstance to his supervisor "because reporting of use of force is mandated by the rules and regulations and General Orders." In light of Squeo's testimony, and our general deference to an agency's experience and expertise in interpreting its own rules and regulations (see *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391-95 (2001)), we cannot say we are left with a firm conviction that the Board made a mistake. See *Cruz*, 2019 IL App (1st) 170915, ¶¶ 46-48. The Board's decision that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents," was not clearly erroneous.

¶ 30    Finally, we address Squeo's challenge to the Board's imposition of a 45-day suspension as "not for just and sufficient cause." He argues that the Board's written decision did not explain why the suspension was appropriate and, therefore, it is impossible to conduct a meaningful review of the sanction. He also asserts that "[w]here there is no violation of the Sheriff's policies—which it looks like this is the case here—there should be no penalty."

¶ 31    A Sheriff's correctional officer may not be suspended except for cause. 55 ILCS 5/3-7012 (West 2018). Cause is "some substantial shortcoming that renders the employee's continued employment in some way detrimental to the discipline and efficiency of the service and something

that the law and a sound public would recognize as good cause for [imposing a sanction]." *Mireles*, 2023 IL App (1st) 221090, ¶ 66. On appeal, we give substantial deference to the Board's decision regarding the appropriateness of a sanction, as the Board is in the best position to determine the effect of an officer's actions on the CCDOC and the office of the Sheriff. *Id.* ¶ 67. As such, our review is limited to determining whether the chosen sanction is so unreasonable or arbitrary as to be unrelated to the requirements of service. *Id.* (citing *Walsh v. Board of Fire and Police Commissioners of the Village of Orland Park*, 96 Ill. 2d 101, 105 (1983)). We may not substitute our judgment for the Board's as to what we may consider to be a "more fitting" sanction. *Id.*

¶ 32    In this case, the Board found that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents," by not documenting in his use of force report that his hand was on Belton's neck. That Order makes clear that "[i]t is the policy of the CCDOC to have written procedures for reporting and documenting incidents involving staff, inmates, and visitors, as well as to ensure that incidents or problems with the facility *** are reported and documented in a timely and professional manner." CCDOC General Order 24.9.1.0, II. The Order further provides that "[a]ny employee failing to file a report or filing a false report shall be subject to disciplinary action up to and including termination of employment and/or the filing of criminal charges." CCDOC General Order 24.9.1.0, VII, C.

¶ 33    It is well-settled that the violation of a single rule may constitute a sufficient basis for discharge. *Mireles*, 2023 IL App (1st) 221090, ¶ 69; *Cruz v. Cook County Sheriff's Merit Board*, 394 Ill. App. 3d 337, 342 (2009). Here, Squeo violated a single Order and was suspended for 45 days. Keeping in mind that discharge is a much more significant sanction than a suspension, we conclude that cause existed to suspend Squeo for 45 days, and that the Board's decision to do so

was not arbitrary, capricious, unreasonably harsh, or unrelated to the requirements of service. See *Mireles*, 2023 IL App (1st) 221090, ¶ 71; *Cintron*, 2022 IL App (1st) 201369, ¶ 33.

¶ 34    As a final matter, we reject Squeo's challenges to his suspension based on there being "no violation of the Sheriff's policies" and on the Board's lack of an explanation as to why it determined a 45-day suspension was the appropriate sanction in his case. First, we have already determined that the Board's finding that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents," was not clearly erroneous. Second, there is no requirement that the Board state its reasons for selecting a specific sanction. Rather, "as long as evidence supports the decision, the Board need not explain itself." *Cintron v. Dart*, 2022 IL App (1st) 201369, ¶ 28. Here, where the Board's factual findings were not against the manifest weight of the evidence and its determination that Squeo violated CCDOC General Order 24.9.1.0, "Reporting Incidents," was not clearly erroneous, Squeo's arguments fail.

¶ 35    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 36    Affirmed.